No. 21-30446

# In the United States Court of Appeals for the Fifth Circuit

ROBERT PARKER,

*Plaintiff- Appellee*

v.

JAMES LEBLANC,

*Defendant- Appellant*

―――――――――――――

On Appeal from the U.S. District Court, Middle District of Louisiana
No. 3:18-cv-01030-JWD-EWD
The Honorable John W. deGravelles, District Judge

―――――――――――――

## APPELLANT'S RECORD EXCERPTS

―――――――――――――

Jeff Landry
  Attorney General
Elizabeth B. Murrill*
  Solicitor General
  *Counsel of Record
Ben Wallace
Josiah Kollmeyer
  Asst. Solicitors General
André Charles Castaing
Phyllis E. Glazer
  Asst. Attorneys General
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 326-6766
MurrillE@ag.louisiana.gov

# TABLE OF CONTENTS

Docket Sheet (ROA.1–12)..............................................................................1

Notice of Appeal (ROA.561)........................................................................2

July 29, 2020 Ruling and Order Granting LeBlanc's First Motion to
Dismiss (ROA.404–435)...........................................................................3

Plaintiff's Third Amended Complaint (ROA.436–458).............................4

June 30, 2021 Ruling and Order Denying LeBlanc's Second Motion to
Dismiss (ROA.519 530)............................................................................5

# TAB 1

APPEAL

# U.S. District Court
# Middle District of Louisiana (Baton Rouge)
# CIVIL DOCKET FOR CASE #: 3:18-cv-01030-JWD-EWD

Parker v. Louisiana Department of Public Safety & Corrections et al
Assigned to: Judge John W. deGravelles
Referred to: Magistrate Judge Erin Wilder-Doomes
Case in other court:  5th Circuit, 21-30446

          19th Judicial District Court, 674764

Cause: 42:1983 Civil Rights Act

Date Filed: 11/20/2018
Jury Demand: Both
Nature of Suit: 550 Prisoner: Civil Rights
Jurisdiction: Federal Question

**Plaintiff**

**Robert Parker**                                    represented by    **Jonathan Michael Rhodes**
                                                                      The Rhodes Law Firm
                                                                      1937 Peniston St
                                                                      New Orleans, LA 70115
                                                                      504-444-3681
                                                                      Email: jonathan@therhodeslawfirm.com
                                                                      *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Stephen Haedicke**
                                                                      Stephen Haedicke
                                                                      1040 Saint Ferdinand St.
                                                                      New Orleans, LA 70117
                                                                      504-291-6990
                                                                      Email: stephen@haedickelaw.com
                                                                      *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Louisiana Department of Public Safety**            represented by    **Christopher Neal Walters**
**and Corrections**                                                   Louisiana Department of Justice
                                                                      1885 North Third Street
                                                                      Ste 2nd Floor
                                                                      Baton Rouge, LA 70804
                                                                      225-326-6200
                                                                      Fax: 225-326-6495
                                                                      Email: waltersc@ag.louisiana.gov
                                                                      *TERMINATED: 10/31/2019*
                                                                      *LEAD ATTORNEY*
                                                                      *ATTORNEY TO BE NOTICED*

                                                                      **Erin Bridget Wheeler**
                                                                      Louisiana Department of Justice
                                                                      1450 Poydras
                                                                      Ste 900

New Orleans, LA 70112
504-599-1200
Fax: 504-599-1212
Email: wheelereb@ag.louisiana.gov
*TERMINATED: 06/28/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Phyllis Esther Glazer**
Louisiana Department of Justice
Office of the Attorney General
1885 North Third Street
Ste 4th Floor
Baton Rouge, LA 70802
225-326-6300
Email: glazerp@ag.louisiana.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**James M. LeBlanc**                    represented by    **Christopher Neal Walters**
*Secretary of DPSC*                                       (See above for address)
                                                          *TERMINATED: 10/31/2019*
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Erin Bridget Wheeler**
                                                          (See above for address)
                                                          *TERMINATED: 06/28/2019*
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Phyllis Esther Glazer**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**Ray Hanson**                          represented by    **H. Bradford Calvit**
                                                          Provosty, Sadler, & deLaunay, APC
                                                          P.O. Box 13530
                                                          934 Third Street, Suite 800 (71301)
                                                          Alexandria, LA 71315-3530
                                                          318-767-3133
                                                          Fax: 318-445-9377 FAX
                                                          Email: bcalvit@provosty.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Eli J. Meaux**
                                                          Provosty, Sadler & deLaunay, APC
                                                          Louisiana

934 Third Street, Suite 906
Alexandria
Alexandria, LA 71301
318-767-3118
Email: emeaux@provosty.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Brenda Acklin**                    represented by  **Christopher Neal Walters**
(See above for address)
*TERMINATED: 10/31/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Erin Bridget Wheeler**
(See above for address)
*TERMINATED: 06/28/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Phyllis Esther Glazer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lasalle Corrections, LLC**          represented by  **H. Bradford Calvit**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eli J. Meaux**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Does 1-10**

**Defendant**

**ABC Insurance Agencies**

| Date Filed | # | Docket Text |
|---|---|---|
| 11/20/2018 | 1 (p.13) | NOTICE OF REMOVAL from 19th Judicial Court, Case Number 674764. (Filing fee $ 400 receipt number ALAMDC-1864801), filed by James M. LeBlanc, Department of Public Safety & Corrections, Brenda Acklin. (Attachments: # 1 (p.13) Attachment, # 2 (p.37) Exhibit 1, # 3 (p.38) Exhibit 2, # 4 Exhibit 3.1, # 5 (p.39) Exhibit 3.2, # 6 (p.49) Exhibit 3.3)(Wheeler, Jeffery) Modified on 11/20/2018 to flatten the attachment (KAH). (Entered: 11/20/2018) |

| 11/20/2018 | 2 (p.37) | Letter to Attorney Jonathon M. Rhodes who is lead counsel for party Robert Parker. Attorney is not admitted to practice in LAMD. (KAH) (Entered: 11/20/2018) |
|---|---|---|
| 12/06/2018 | 3 (p.38) | ORDER: Plaintiffs counsel, Jonathan M. Rhodes, shall personally appear on 12/20/2018 at 10:00 AM in Courtroom 5 before Magistrate Judge Erin Wilder-Doomes and SHOW CAUSE for failure to comply with the court's 11/20/2018 Letter. FURTHER, Jonathan M. Rhodes, shall complete the attorney admission packet located on the Court's website as previously instructed in the November 20, 2018 Letter from the court by 12/13/2018 in lieu of appearing for the above show cause hearing. The clerk's office is to serve this order to Jonathan M. Rhodes, via certified mail return receipt requested to the address listed on PACER. Signed by Magistrate Judge Erin Wilder-Doomes on 12/06/2018. (NLT) (Entered: 12/06/2018) |
| 12/13/2018 | 4 | Notice to Counsel: In light of attorney Jonathan Rhodes becoming admitted the Show Cause Hearing set for 12/20/2018 is CANCELED. (This is a TEXT ENTRY ONLY. There is no hyperlink or PDF document associated with this entry.) (BLR) (Entered: 12/13/2018) |
| 12/19/2018 | 5 (p.39) | SCHEDULING CONFERENCE ORDER: Scheduling Conference set for 2/7/2019 at 04:00 PM in chambers before Magistrate Judge Erin Wilder-Doomes. Status Report due by 1/24/2019. Signed by Magistrate Judge Erin Wilder-Doomes on 12/18/2018. (KAH) (Entered: 12/19/2018) |
| 01/22/2019 | 6 (p.49) | STATUS REPORT by Robert Parker. (Rhodes, Jonathan) (Entered: 01/22/2019) |
| 01/28/2019 | 7 | Notice to Counsel: In light of all defendants having not made an appearance in this matter, the Scheduling Conference is reset for 4/4/2019 at 10:30 AM in chambers before Magistrate Judge Erin Wilder-Doomes. Status Report due by 3/21/2019. (This is a TEXT ENTRY ONLY. There is no hyperlink or PDF document associated with this entry.)(BLR) (Entered: 01/28/2019) |
| 02/14/2019 | 8 (p.58) | ANSWER to Complaint with Jury Demand by Brenda Acklin, James M. LeBlanc, Louisiana Department of Public Safety and Corrections.(Wheeler, Jeffery) (Entered: 02/14/2019) |
| 03/28/2019 | 9 | ORDER TO SHOW CAUSE: Plaintiff shall show cause as to why claims against Ray Hanson should not be dismissed pursuant to Local Rule 41(1)(b)(1)(A). Show Cause Hearing set for 4/11/2019 at 10:00 AM in Courtroom 5 before Magistrate Judge Erin Wilder-Doomes. Show Cause Response due by 4/4/2019. Signed by Magistrate Judge Erin Wilder-Doomes on 3/28/2019. (This is a TEXT ENTRY ONLY. There is no hyperlink or PDF document associated with this entry.)(BLR) (Entered: 03/28/2019) |
| 04/01/2019 | 10 | Notice to Counsel: In light of the 9 Order to Show Cause, the the Scheduling Conference is set for 4/4/2019 is CANCELED. (This is a TEXT ENTRY ONLY. There is no hyperlink or PDF document associated with this entry.) (BLR) (Entered: 04/01/2019) |
| 04/03/2019 | 11 (p.74) | Rule 41(1)(b)(1)(A) Show Cause RESPONSE and Motion to Extend Time for Service of Process filed by Robert Parker. (Attachments: # 1 (p.13) Exhibit Exhibits)(Rhodes, Jonathan) Modified on 4/4/2019 to edit the text (KAH). (Entered: 04/03/2019) |
| 04/04/2019 | 12 (p.84) | First MOTION to Withdraw 11 (p.74) Rule 41(1)(b)(1)(A) Show Cause RESPONSE and Motion to Extend Time for Service of Process filed by Robert Parker. (Attachments: # 1 (p.13) Exhibit Exhibits)(Rhodes, Jonathan) Modified on 4/4/2019 to edit the text (KAH). by Robert Parker. (Attachments: # 1 (p.13) Proposed Pleading; |

| | | Proposed Order)(Rhodes, Jonathan) (Entered: 04/04/2019) |
|---|---|---|
| 04/04/2019 | 13 (p.87) | RESPONSE to SHOW CAUSE Why Defendant Warden Ray Hanson Should Not be Dismissed filed by Robert Parker. (Rhodes, Jonathan) Modified on 4/4/2019 to edit the text (KAH). (Entered: 04/04/2019) |
| 04/04/2019 | 14 (p.90) | First MOTION for Extension of Time Service of Process by Robert Parker. (Attachments: # 1 (p.13) Proposed Pleading; Proposed Order)(Rhodes, Jonathan) (Additional attachment(s) added on 4/9/2019: # 2 (p.37) Exhibit) (ELW). Modified on 4/9/2019 document added as granted by rec doc 19(ELW). (Entered: 04/04/2019) |
| 04/04/2019 | | MOTION(S) REFERRED: 12 (p.84) First MOTION to Withdraw 11 (p.74) Rule 41(1)(b)(1)(A) Show Cause RESPONSE and Motion to Extend Time for Service of Process filed by Robert Parker. (Attachments: # 1 Exhibit Exhibits)(Rhodes, Jonathan) Modified on 4/4/2019 to edit the text (KAH). <, 14 (p.90) First MOTION for Extension of Time Service of Process. This motion is now pending before the USMJ. (KAH) (Entered: 04/04/2019) |
| 04/05/2019 | 15 (p.100) | Exhibit(s) to 14 (p.90) First MOTION for Extension of Time Service of Process, 13 (p.87) Response by Robert Parker. (Rhodes, Jonathan) (Entered: 04/05/2019) |
| 04/05/2019 | 16 (p.106) | First MOTION to Withdraw 15 (p.100) Exhibit(s) to 14 (p.90) First MOTION for Extension of Time Service of Process, 13 (p.87) Response by Robert Parker. (Rhodes, Jonathan) by Robert Parker. (Attachments: # 1 (p.13) Proposed Pleading; Proposed Order)(Rhodes, Jonathan) (Entered: 04/05/2019) |
| 04/05/2019 | 17 (p.109) | First MOTION for Leave to Supplement Motion *to Extend Time for Service of Process* by Robert Parker. (Attachments: # 1 (p.13) Proposed Pleading; Proposed Order, # 2 (p.37) Exhibit Supplemental Exhibits)(Rhodes, Jonathan) (Entered: 04/05/2019) |
| 04/08/2019 | | MOTION(S) REFERRED: 17 (p.109) First MOTION for Leave to Supplement Motion *to Extend Time for Service of Process*, 16 (p.106) First MOTION to Withdraw 15 (p.100) Exhibit(s) to 14 (p.90) First MOTION for Extension of Time Service of Process, 13 (p.87) Response by Robert Parker. (Rhodes, Jonathan) . This motion is now pending before the USMJ. (KAH) (Entered: 04/08/2019) |
| 04/08/2019 | 18 | ORDER granting 12 (p.84) Motion to Withdraw 11 (p.74) Rule 41(1)(b)(1)(A) Show Cause RESPONSE and Motion to Extend Time for Service of Process. Signed by Magistrate Judge Erin Wilder-Doomes on 4/8/2019. (This is a TEXT ENTRY ONLY. There is no hyperlink or PDF document associated with this entry.) (BLR) (Entered: 04/08/2019) |
| 04/08/2019 | 19 | ORDER granting 16 (p.106) Motion to Withdraw 15 (p.100) Exhibit(s) AND granting 17 (p.109) MOTION to Supplement. The clerk is directed to attach R. Doc. 17-2 to R. Doc. 14. Signed by Magistrate Judge Erin Wilder-Doomes on 4/8/2019. This is a TEXT ENTRY ONLY. There is no hyperlink or PDF document associated with this entry.) (BLR) (Entered: 04/08/2019) |
| 04/09/2019 | 20 | ORDER granting 14 (p.90) Motion to Extend Time for Service of Process for good cause shown. Plaintiff shall have until May 9, 2019 for service of process on the defendant Ray Hanson. Signed by Magistrate Judge Erin Wilder-Doomes on 4/9/2019. (This is a TEXT ENTRY ONLY. There is no hyperlink or PDF document associated with this entry.) (BLR) (Entered: 04/09/2019) |
| 04/09/2019 | 21 | |

| | | |
|---|---|---|
| | | Notice to Counsel: In light of the Order (R. Doc. 20), the Show Cause Hearing set for 4/11/2019 is CANCELED. (This is a TEXT ENTRY ONLY. There is no hyperlink or PDF document associated with this entry.) (BLR) (Entered: 04/09/2019) |
| 04/17/2019 | 22 (p.118) | First MOTION for Leave to File First Amended Complaint *and Add a Defendant* by Robert Parker. (Attachments: # 1 (p.13) Proposed Pleading; Proposed Order to Grant Motion for Leave to Amend, # 2 (p.37) Attachment First Amended Complaint, # 3 (p.38) Memorandum in Support Memorandum in Support of Motion for Leave to Amend)(Rhodes, Jonathan) (Entered: 04/17/2019) |
| 04/19/2019 | | MOTION(S) REFERRED: 22 (p.118) First MOTION for Leave to File First Amended Complaint *and Add a Defendant*. This motion is now pending before the USMJ. (ELW) (Entered: 04/19/2019) |
| 04/24/2019 | 23 | IT IS ORDERED that the 22 (p.118) Motion for Leave to File Amended Complaint and Add a Party filed by Plaintiff Robert Parker is GRANTED as there is no Scheduling Order in place at this time, defendants consent to the motion and face no prejudice, leave shall be freely granted pursuant to Fed. R. Civ. P. 15(a), and good grounds exist in that Plaintiff contends that he recently discovered the identity of the newly-added defendant, LaSalle Corrections, LLC, the alleged employer of Defendant Ray Hanson. The clerk is directed to docket R. Doc. [22-2], which shall become the operative Complaint of Plaintiff in this matter. Signed by Magistrate Judge Erin Wilder-Doomes on 4/24/2019. (This is a TEXT ENTRY ONLY. There is no hyperlink or PDF document associated with this entry.) (BLR) (Entered: 04/24/2019) |
| 04/24/2019 | 24 (p.135) | Summons Submitted (Rhodes, Jonathan) (Entered: 04/24/2019) |
| 04/24/2019 | 26 (p.138) | AMENDED COMPLAINT against All Defendants filed by Robert Parker.(ELW) (Entered: 04/25/2019) |
| 04/25/2019 | 25 (p.137) | Summons Submitted (Rhodes, Jonathan) (Entered: 04/25/2019) |
| 04/25/2019 | 27 (p.149) | Summons Issued as to Ray Hanson, Lasalle Corrections, LLC. (NOTICE: Counsel shall print and serve both the summons and all attachments in accordance with Federal Rule of Civil Procedure 4.) (KAH) (Entered: 04/25/2019) |
| 05/08/2019 | 28 (p.152) | Mail Returned as Undeliverable on 3 (p.38) Order to Show Cause. Mail returned from Jonthan Rhodes. Reason: Unable to Forward. (EDC) (Entered: 05/09/2019) |
| 05/14/2019 | 29 (p.154) | CERTIFICATE OF SERVICE by Robert Parker *on Defendant Warden Ray Hanson* (Attachments: # 1 (p.13) Exhibit USPS Certified Mailing Return Receipt)(Rhodes, Jonathan) (Entered: 05/14/2019) |
| 05/14/2019 | 30 (p.156) | CERTIFICATE OF SERVICE by Robert Parker *on Defendant Lasalle Corrections LLC through registered Agent* (Attachments: # 1 (p.13) Exhibit Certified Mail Return Receipt)(Rhodes, Jonathan) (Entered: 05/14/2019) |
| 05/24/2019 | 31 | STRICKEN FROM THE RECORD MOTION for Extension of Time to Serve Defendant Ray Hanson by Robert Parker. (Attachments: # 1 Proposed Pleading; Proposed Order, # 2 Exhibit Proof of Service, # 3 Exhibit Supplemental Exhibit, # 4 Exhibit Proof of Service)(Rhodes, Jonathan) Modified on 5/24/2019 to edit the text (SWE). Modified on 5/29/2019 to remove documents as they have been stricken in accordance with RD 32 (SWE). (Entered: 05/24/2019) |

| 05/24/2019 | | MOTION(S) REFERRED: 31 MOTION for Extension of Time to Serve Defendant Ray Hanson. This motion is now pending before the USMJ. (SWE) (Entered: 05/24/2019) |
|---|---|---|
| 05/28/2019 | 32 | ORDER striking 31 Motion for Extension of Time to Serve Defendant Ray Hanson for failure to comply with Local Civil Rule 10(a)(1). Signed by Magistrate Judge Erin Wilder-Doomes on 5/28/2019. (This is a TEXT ENTRY ONLY. There is no hyperlink or PDF document associated with this entry.) (BLR) (Entered: 05/28/2019) |
| 05/28/2019 | 33 (p.158) | First MOTION for Extension of Time to File Service of Process by Robert Parker. (Attachments: # 1 (p.13) Proposed Pleading; Proposed Order, # 2 (p.37) Exhibit Proof of Service, # 3 (p.38) Exhibit Supplemental Exhibit, # 4 Exhibit Supplemental Exhibit)(Rhodes, Jonathan) (Entered: 05/28/2019) |
| 05/29/2019 | | MOTION(S) REFERRED: 33 (p.158) First MOTION for Extension of Time to File Service of Process. This motion is now pending before the USMJ. (KAH) (Entered: 05/29/2019) |
| 05/29/2019 | 34 | IT IS ORDERED that the 33 (p.158) Motion for Extension of Time to Serve Defendant Ray Hanson is granted for good cause shown. Plaintiff is hereby granted the requested extension of time through and including May 24, 2019 to serve Defendant Ray Hanson nunc pro tunc. IT IS FURTHER ORDERED that the [33-4] Affidavit of Service shall be filed into the record as proof of service on Defendant Ray Hanson. Signed by Magistrate Judge Erin Wilder-Doomes on 5/29/2019. (This is a TEXT ENTRY ONLY. There is no hyperlink or PDF document associated with this entry.) (BLR) (Entered: 05/29/2019) |
| 06/17/2019 | 35 (p.168) | MOTION to Dismiss Claims for Misjoiner or in Alternative Motion to Sever and Transfer by Ray Hanson. (Attachments: # 1 (p.13) Memorandum In Support, # 2 (p.37) Exh 1 RCC Contracts, # 3 (p.38) Proposed Order - Sever & Transfer, # 4 Alternate Proposed Order - Dismiss claims)(Calvit, H.). Added MOTION to Sever and Modified on 6/18/2019 to edit text (LT). (Entered: 06/17/2019) |
| 06/18/2019 | 36 | NOTICE of Briefing Schedule on 35 (p.168) MOTION to Dismiss Claims for Misjoiner MOTION to Sever And Transfer : Opposition to the motion shall be filed within 21 days from the filing of the motion and shall not exceed 10 pages excluding attachments. The mover may file a reply brief within 14 days of the filing of the opposition and shall be limited to a total of 5 pages. No motion for leave will be required. Sur-Reply briefs will be permitted only with leave of Court for extraordinary reasons supported by sufficient facts. (This is a TEXT ENTRY ONLY. There is no hyperlink or PDF document associated with this entry.)(KDC) (Entered: 06/18/2019) |
| 06/26/2019 | 37 (p.212) | MOTION to Substitute Christopher N. Walters in place of Jeffery A. Wheeler, II as Attorney by Brenda Acklin, James M. LeBlanc, Louisiana Department of Public Safety and Corrections. (Attachments: # 1 (p.13) Proposed Pleading;)(Wheeler, Jeffery) (Main Document 37 replaced on 7/1/2019) (ELW). Modified on 7/1/2019 replaced as ordered by rec doc 39 (ELW). (Entered: 06/26/2019) |
| 06/26/2019 | | MOTION(S) REFERRED: 37 (p.212) MOTION to Substitute Christopher N. Walters in place of Jeffery A. Wheeler, II as Attorney . This motion is now pending before the USMJ. (LT) (Entered: 06/26/2019) |
| 06/26/2019 | 38 (p.216) | MOTION to Substitute Motion to Substitute and Enroll as Counsel by Brenda Acklin, James M. LeBlanc, Louisiana Department of Public Safety and Corrections. (Attachments: # 1 (p.13) Proposed Pleading;, # 2 (p.37) Attachment, # 3 (p.38) |

| | | |
|---|---|---|
| | | Attachment)(Wheeler, Jeffery) (Entered: 06/26/2019) |
| 06/27/2019 | | MOTION(S) REFERRED: 38 (p.216) MOTION to Substitute Motion to Substitute and Enroll as Counsel . This motion is now pending before the USMJ. (KMW) (Entered: 06/27/2019) |
| 06/28/2019 | 39 | ORDER granting 38 (p.216) MOTION for Leave to Substitute Document. The clerk is directed to replace R. Doc. 37 with 38-2. Signed by Magistrate Judge Erin Wilder-Doomes on 6/28/2019. (This is a TEXT ENTRY ONLY. There is no hyperlink or PDF document associated with this entry.) (BLR) (Entered: 06/28/2019) |
| 06/28/2019 | 40 | ORDER granting 37 (p.212) Motion to Substitute Attorney. Christopher Neal Walters for Brenda Acklin,Christopher Neal Walters for James M. LeBlanc,Christopher Neal Walters for Louisiana Department of Public Safety and Corrections replacing Jeffery A. "Beau" Wheeler, II. Signed by Magistrate Judge Erin Wilder-Doomes on 6/28/2019. (This is a TEXT ENTRY ONLY. There is no hyperlink or PDF document associated with this entry.) (BLR) (Entered: 06/28/2019) |
| 07/08/2019 | 41 (p.223) | First MEMORANDUM in Opposition to 35 (p.168) MOTION to Dismiss Claims for Misjoiner MOTION to Sever And Transfer filed by Robert Parker. (Attachments: # 1 (p.13) Proposed Pleading; Proposed Order)(Rhodes, Jonathan) (Entered: 07/08/2019) |
| 07/22/2019 | 42 (p.232) | REPLY to 35 (p.168) MOTION to Dismiss Claims for Misjoiner MOTION to Sever And Transfer, 41 (p.223) Memorandum in Opposition to Motion filed by Ray Hanson. (Calvit, H.) (Entered: 07/22/2019) |
| 08/10/2019 | 43 (p.238) | First MOTION for Clerks Entry of Default *or for Extension and Leave to Affect Service* as to LaSalle Corrections by Robert Parker. (Attachments: # 1 (p.13) Affidavit Affidavit of Service)(Rhodes, Jonathan). Added MOTION for Extension of Time on 8/12/2019 (KMW). (Entered: 08/10/2019) |
| 08/12/2019 | 44 (p.242) | MOTION to Dismiss Claims for Misjoinder, or in the Alternative, MOTION to Sever and Transfer by Lasalle Corrections, LLC. (Attachments: # 1 (p.13) Memorandum In Support, # 2 (p.37) Exhibit 1, # 3 (p.38) Proposed Order - Sever & Transfer, # 4 Alternate Proposed Order - Dismiss claims)(Calvit, H.). Added MOTION to Sever on 8/12/2019 (NLT). (Entered: 08/12/2019) |
| 08/12/2019 | | MOTION(S) REFERRED: 43 (p.238) First MOTION for Clerks Entry of Default *or for Extension and Leave to affect Service* as to LaSalle Corrections MOTION for Extension of Time. This motion is now pending before the USMJ. (KMW) (Entered: 08/12/2019) |
| 08/13/2019 | 45 | ORDER denying as moot 43 (p.238) Motion for Entry of Default, or in the Alternative to Grant an Extension of time to Affect Service on Lasalle in light of the pending 44 (p.242) Motion to Dismiss filed by Lasalle. Signed by Magistrate Judge Erin Wilder-Doomes on 8/13/2019. (This is a TEXT ENTRY ONLY. There is no hyperlink or PDF document associated with this entry.) (BLR) (Entered: 08/13/2019) |
| 08/31/2019 | 46 (p.287) | Memorandum in Opposition to 44 (p.242) MOTION to Dismiss Claims for Misjoinder, or in the Alternativeto Sever and Transfer filed by Robert Parker. (Attachments: # 1 (p.13) Proposed Pleading; Proposed Order)(Rhodes, Jonathan) Modified on 9/3/2019 to edit text. (EDC). (Entered: 08/31/2019) |
| 10/11/2019 | 47 (p.297) | RULING AND ORDER denying Motion to Dismiss Claims for Misjoinder, or in the Alternative, to Sever and Transfer (Doc. 35 & 44). Plaintiff is given twenty- eight (28) days in which to amend the operative complaint to add specificity and cure any |

| | | |
|---|---|---|
| | | deficiencies therein. Signed by Judge John W. deGravelles on 10/10/2019. (KAH) Modified on 10/15/2019 to edit the text (KAH). (Entered: 10/11/2019) |
| 10/11/2019 | | Set/Reset Deadlines. (KAH) (Entered: 10/11/2019) |
| 10/29/2019 | 48 | STRICKEN FROM THE RECORD SECOND AMENDED COMPLAINT against All Defendants, filed by Robert Parker.(Rhodes, Jonathan) Modified on 11/4/2019 to remove document as it has been stricken by Order #51(LLH). (Entered: 10/29/2019) |
| 10/31/2019 | 49 (p.310) | MOTION to Substitute Phyllis E. Glazer in place of Christopher N. Walters as Attorney by Brenda Acklin, James M. LeBlanc, Louisiana Department of Public Safety and Corrections. (Attachments: # 1 (p.13) Proposed Order)(Walters, Christopher) (Entered: 10/31/2019) |
| 10/31/2019 | | MOTION(S) REFERRED: 49 (p.310) MOTION to Substitute Phyllis E. Glazer in place of Christopher N. Walters as Attorney . This motion is now pending before the USMJ. (SWE) (Entered: 10/31/2019) |
| 10/31/2019 | 50 | ORDER granting 49 (p.310) Motion to Substitute Attorney. Phyllis Esther Glazer for Brenda Acklin,Phyllis Esther Glazer for James M. LeBlanc,Phyllis Esther Glazer for Louisiana Department of Public Safety and Corrections replacing Christopher N. Walters. Signed by Magistrate Judge Erin Wilder-Doomes on 10/31/2019. (This is a TEXT ENTRY ONLY. There is no hyperlink or PDF document associated with this entry.) (BLR) (Entered: 10/31/2019) |
| 11/01/2019 | 51 | ORDER: The Second Amended Complaint is hereby STRICKEN from the record for failure to comply with Local Rule 10(a)(1). The plaintiff shall file an amended complaint in compliance with the 47 (p.297) Ruling and Order and Local Rule 10(a)(1) by no later than 11/8/2019. Signed by Magistrate Judge Erin Wilder-Doomes on 11/1/2019. (This is a TEXT ENTRY ONLY. There is no hyperlink or PDF document associated with this entry.)(BLR) (Entered: 11/01/2019) |
| 11/05/2019 | 52 (p.313) | SECOND AMENDED COMPLAINT FOR Negligence, False Imprisonment, and Violation of Constitutional Rights against All Defendants, filed by Robert Parker.(Rhodes, Jonathan) Modified on 11/5/2019 to edit the docket text (SWE). (Entered: 11/05/2019) |
| 11/12/2019 | 53 (p.331) | MOTION to Dismiss for Failure to State a Claim by Brenda Acklin, James M. LeBlanc, Louisiana Department of Public Safety and Corrections. (Attachments: # 1 (p.13) Memorandum in Support)(Glazer, Phyllis) (Entered: 11/12/2019) |
| 11/13/2019 | 54 | NOTICE of Briefing Schedule on 53 (p.331) MOTION to Dismiss for Failure to State a Claim : Opposition to the motion shall be filed within 21 days from the filing of the motion and shall not exceed 10 pages excluding attachments. The mover may file a reply brief within 14 days of the filing of the opposition and shall be limited to a total of 5 pages. No motion for leave will be required. Sur-Reply briefs will be permitted only with leave of Court for extraordinary reasons supported by sufficient facts. (This is a TEXT ENTRY ONLY. There is no hyperlink or PDF document associated with this entry.)(KDC) (Entered: 11/13/2019) |
| 11/20/2019 | 55 (p.340) | ANSWER to 52 (p.313) Second Amended Complaint by Ray Hanson, Lasalle Corrections, LLC.(Calvit, H.) Modified on 11/20/2019 to edit the docket text (SWE). (Entered: 11/20/2019) |
| 12/02/2019 | 56 (p.353) | MEMORANDUM in Opposition to 53 (p.331) MOTION to Dismiss for Failure to State a Claim filed by Robert Parker. (Attachments: # 1 (p.13) Proposed Pleading; |

| | | |
|---|---|---|
| | | Proposed Order)(Rhodes, Jonathan)Modified on 12/3/2019 to edit text (LLH). (Entered: 12/02/2019) |
| 12/06/2019 | 57 (p.367) | MOTION for Leave to File Reply Memorandum in Two Excess Pages by Brenda Acklin, James M. LeBlanc, Louisiana Department of Public Safety and Corrections. (Attachments: # 1 (p.13) Proposed Order, # 2 (p.37) Proposed Pleading;)(Glazer, Phyllis) (Entered: 12/06/2019) |
| 12/09/2019 | 58 (p.378) | ORDER granting 57 (p.367) MOTION for Leave to File Reply Memorandum in Two Excess Pages filed by Brenda Acklin, James M. LeBlanc, Louisiana Department of Public Safety and Corrections. Signed by Judge John W. deGravelles on 12/5/2019. (SWE) (Entered: 12/09/2019) |
| 12/09/2019 | 59 (p.379) | REPLY MEMORANDUM in Support of 53 (p.331) MOTION to Dismiss for Failure to State a Claim filed by Brenda Acklin, James M. LeBlanc, Louisiana Department of Public Safety and Corrections. (SWE) Modified on 12/10/2019 to edit text (LLH). (Entered: 12/09/2019) |
| 12/20/2019 | 60 (p.387) | Consent MOTION for Scheduling Conference by Robert Parker. (Attachments: # 1 (p.13) Proposed Pleading; Proposed Order)(Rhodes, Jonathan) (Entered: 12/20/2019) |
| 12/23/2019 | | MOTION(S) REFERRED: 60 (p.387) Consent MOTION for Scheduling Conference . This motion is now pending before the USMJ. (KMW) (Entered: 12/23/2019) |
| 01/02/2020 | 61 | ORDER granting 60 (p.387) Unopposed Motion for Scheduling Conference. Scheduling Conference set for 2/13/2020 at 10:30 AM in chambers before Magistrate Judge Erin Wilder-Doomes. Status Report due 1/30/2020. Signed by Magistrate Judge Erin Wilder-Doomes on 1/2/2020. (This is a TEXT ENTRY ONLY. There is no hyperlink or PDF document associated with this entry.) (BLR) (Entered: 01/02/2020) |
| 01/02/2020 | | Set/Reset Deadlines: Status Report due by 1/30/2020. (LLH) (Entered: 01/02/2020) |
| 01/30/2020 | 62 (p.391) | Second STATUS REPORT by Robert Parker. (Rhodes, Jonathan) (Entered: 01/30/2020) |
| 02/05/2020 | 63 | Notice to Counsel: The Scheduling Conference set for 2/13/2020 is CANCELED pending further review of the 62 (p.391) Status Report. (This is a TEXT ENTRY ONLY. There is no hyperlink or PDF document associated with this entry.) (BLR) (Entered: 02/05/2020) |
| 02/14/2020 | 64 | Notice to Counsel: In light of the pending 53 (p.331) Motion to Dismiss, good cause is shown to defer entry of a scheduling order at this time. The court will review this matter in 120 days. (This is a TEXT ENTRY ONLY. There is no hyperlink or PDF document associated with this entry.) (BLR) (Entered: 02/14/2020) |
| 07/29/2020 | 65 (p.404) | RULING AND ORDER granting in part and denying in part 53 (p.331) Motion to Dismiss for Failure to State a Claim. Plaintiff shall be given twenty-eight (28) in which to cure the operative complaint of these deficiencies. Failure to do so will result in the dismissal of these claims with prejudice. Signed by Judge John W. deGravelles on 7/29/2020. (KMW) (Main Document 65 replaced on 7/29/2020) (KDC). (Entered: 07/29/2020) |
| 08/12/2020 | 66 (p.436) | THIRD AMENDED COMPLAINT FOR Negligence, False Imprisonment, and Violation of Constitutional Rights against All Defendants, filed by Robert Parker. (Attachments: # 1 (p.13) Exhibit Exhibits)(Rhodes, Jonathan) Modified on 8/13/2020 to edit text (ELW). (Entered: 08/12/2020) |

| 09/14/2020 | 67 (p.459) | MOTION to Dismiss Third Amended Complaint by James M. LeBlanc. (Attachments: # 1 (p.13) Memorandum in Support)(Glazer, Phyllis) Modified on 9/15/2020 to edit text (LLH). (Entered: 09/14/2020) |
|---|---|---|
| 09/15/2020 | 68 | NOTICE of Briefing Schedule on 67 (p.459) MOTION to Dismiss for Failure to State a Claim : Opposition to the motion shall be filed within 21 days from the filing of the motion and shall not exceed 25 pages excluding attachments. The mover may file a reply brief within 14 days of the filing of the opposition and shall be limited to a total of 10 pages. No motion for leave will be required. Sur-Reply briefs will be permitted only with leave of Court for extraordinary reasons supported by sufficient facts. (This is a TEXT ENTRY ONLY. There is no hyperlink or PDF document associated with this entry.)(KDC) (Entered: 09/15/2020) |
| 09/15/2020 | 69 (p.471) | Affirmative Defenses and ANSWER to 66 (p.436) Third Amended Complaint with Jury Demand by Brenda Acklin, Louisiana Department of Public Safety and Corrections.(Glazer, Phyllis) Modified on 9/16/2020 to edit text. (EDC). (Entered: 09/15/2020) |
| 09/18/2020 | 70 (p.484) | ANSWER to 66 (p.436) Third Amended Complaint by Ray Hanson, Lasalle Corrections, LLC.(Calvit, H.) Modified on 9/18/2020 to edit the docket text (KMW). (Entered: 09/18/2020) |
| 10/02/2020 | 71 (p.497) | MEMORANDUM in Opposition to 67 (p.459) MOTION to Dismiss Third Amended Complaint *by Secretary LeBlanc* filed by Robert Parker. (Attachments: # 1 (p.13) Proposed Pleading; Proposed Order)(Rhodes, Jonathan) (Entered: 10/02/2020) |
| 10/16/2020 | 72 (p.510) | REPLY MEMORANDUM in Support of 67 (p.459) MOTION to Dismiss Third Amended Complaint, 71 (p.497) Memorandum in Opposition to Motion filed by James M. LeBlanc. (Glazer, Phyllis) Modified on 10/19/2020 to edit text (LLH). (Entered: 10/16/2020) |
| 01/31/2021 | 73 (p.516) | MOTION to Enroll Stephen Haedicke as Additional Attorney by Robert Parker. (Attachments: # 1 (p.13) Proposed Pleading; Proposed Order)(Rhodes, Jonathan) (Entered: 01/31/2021) |
| 02/01/2021 |  | MOTION(S) REFERRED: 73 (p.516) MOTION to Enroll Stephen Haedicke as Additional Attorney . This motion is now pending before the USMJ. (KMW) (Entered: 02/01/2021) |
| 02/01/2021 | 74 | ORDER granting 73 (p.516) Motion to Enroll Additional Attorney. Added attorney Stephen Haedicke for Robert Parker. Signed by Magistrate Judge Erin Wilder-Doomes on 2/1/2021. (This is a TEXT ENTRY ONLY. There is no hyperlink or PDF document associated with this entry.) (BLR) (Entered: 02/01/2021) |
| 06/30/2021 | 75 (p.519) | RULING AND ORDER granting in part and denying in part 67 (p.459) MOTION to Dismiss Third Amended Complaint. The motion is GRANTED in that Plaintiff's claims for respondeat superior and indemnification against LeBlanc are DISMISSED WITH PREJUDICE. In all other respects, the motion is DENIED. Signed by Judge John W. deGravelles on 6/30/2021. (LLH) (Entered: 06/30/2021) |
| 07/01/2021 | 76 (p.531) | SCHEDULING CONFERENCE ORDER: Scheduling Conference set for 7/29/2021 at 02:00 PM in chambers before Magistrate Judge Erin Wilder-Doomes. Status Report due by 7/15/2021. Any proposed schedule should have a dispositive motions and Daubert motions deadline no later than February 4, 2022. Signed by Magistrate Judge Erin Wilder-Doomes on 7/1/2021. (BLR) (Entered: 07/01/2021) |

| 07/15/2021 | 77 (p.541) | Joint STATUS REPORT by Robert Parker. (Rhodes, Jonathan) (Entered: 07/15/2021) |
|---|---|---|
| 07/19/2021 | 78 | Notice to Counsel: The Scheduling Conference set for 7/29/2021 is CANCELED. The court will issue a separate scheduling order in this matter. (This is a TEXT ENTRY ONLY. There is no hyperlink or PDF document associated with this entry.) (BLR) (Entered: 07/19/2021) |
| 07/20/2021 | 79 (p.554) | SCHEDULING ORDER: In accordance with FRCP 16(b), the following discovery deadlines are established. Amended Pleadings due by 8/4/2021. Discovery due by 1/4/2022. Plaintiff`s Expert Witness List due by 10/4/2021. Defendant`s Expert Witness List due by 11/4/2021. Plaintiff`s Expert Reports due by 11/4/2021. Defendant`s Expert Reports due by 12/4/2021. Discovery from Experts due by 1/4/2022. Motions shall be filed by 2/4/2022. Proposed Pretrial Order due by 5/27/2022. Pretrial Conference set for 6/16/2022 at 01:30 PM in chambers before Judge John W. deGravelles. Motions In Limine shall be filed by 6/24/2022. Affidavit of Settlement Efforts due by 7/8/2022. Joint jury instructions, voir dire, verdict forms, and trial briefs due by 7/29/2022. Jury Trial set for 8/15/2022 to 8/19/2022 at 09:00 AM in Courtroom 1. Signed by Magistrate Judge Erin Wilder-Doomes on 7/19/2021. (SWE) Modified on 7/20/2021 to edit the text (NLT). (Entered: 07/20/2021) |
| 07/20/2021 | 80 (p.557) | SETTLEMENT CONFERENCE ORDER: Settlement Conference set for 12/17/2021 at 01:30 PM in chambers. Signed by Magistrate Judge Erin Wilder-Doomes on 7/19/2021. (SWE) (Entered: 07/20/2021) |
| 07/26/2021 | 81 (p.561) | NOTICE OF APPEAL to the USCA for the 5th Circuit by James M. LeBlanc. Filing fee $ 505, receipt number ALAMDC-2323006. The transcript request form for appeal cases is located at www.lamd.uscourts.gov/local-forms/all-local-forms. (Glazer, Phyllis) (Entered: 07/26/2021) |
| 08/09/2021 | 82 (p.562) | TRANSCRIPT REQUEST by James M. LeBlanc re 81 (p.561) Notice of Appeal to the USCA for the 5th Circuit, (Glazer, Phyllis) (Entered: 08/09/2021) |
| 08/10/2021 | 83 | USCA Case Number 21-30446 for 81 (p.561) Notice of Appeal to the USCA for the 5th Circuit, filed by James M. LeBlanc. (SWE) (Entered: 08/10/2021) |

**Case #: 3:18-cv-01030-JWD-EWD**

TAB 2

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ROBERT PARKER** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 18-1030-JWD-EWD** |
| | * | |
| **LOUISIANA DEPARTMENT OF PUBLIC** | * | **DISTRICT JUDGE DeGRAVELLES** |
| **SAFETY AND CORRECTIONS, ET AL.** | * | |
| | * | **MAG. JUDGE WILDER-DOOMES** |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## NOTICE OF APPEAL BY DEFENDANT JAMES LEBLANC

**PLEASE TAKE NOTICE:**

Defendant Secretary James LeBlanc, who is now sued only "in his individual capacity," (Rec. Doc. 66, ¶16) hereby notifies this Honorable Court and all parties to this action that he is taking a collateral order appeal to the United States Fifth Circuit Court of Appeals from the Ruling and Order (Rec. Doc. 75), which denied his Motion to Dismiss based on qualified immunity (Rec. Doc. 67).

Respectfully Submitted on July 26, 2021,

**JEFF LANDRY**
**ATTORNEY GENERAL**

BY:    *s/Phyllis E. Glazer*
**PHYLLIS E. GLAZER (#29878)** (Lead Counsel)
**ASSISTANT ATTORNEY GENERAL**

**Louisiana Department of Justice**
Litigation Division, Civil Rights Section
1885 North Third Street, 4th Floor
Post Office Box 94005 (70804-9005)
Baton Rouge, Louisiana 70802
Telephone:    225-326-6300
Facsimile:    225-326-6495
E-mail:        GlazerP@ag.louisiana.gov
*Attorney for Defendant James LeBlanc*

1

21-30446.561

# TAB 3

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ROBERT PARKER**

**CIVIL ACTION**

**VERSUS**

**NO. 18-1030-JWD-EWD**

**LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, ET AL.**

## RULING AND ORDER

This matter comes before the Court on the *Motion to Dismiss* (Doc. 53) filed by Defendants, the State of Louisiana, through the Department of Public Safety and Corrections ("DPSC" or "DOC"); James LeBlanc, individually and in his official capacity as Secretary of DPSC; and Brenda Acklin (collectively, the "DPSC Defendants"). Plaintiff Robert Parker ("Plaintiff") opposes the motion. (Doc. 56.) DPSC Defendants have filed a reply. (Doc. 59.) Oral argument is not necessary. The Court has carefully considered the law, the facts alleged in the operative complaint, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, DPSC Defendants' motion is granted in part and denied in part.

## I.     Relevant Factual Background

### A. Introduction

The following facts are taken from Plaintiff's *Second Amended Complaint for Negligence, False Imprisonment, and Violation of Constitutional Rights.* (*"Second Amended Complaint"*), Doc. 52. They are assumed to be true for purposes of this motion. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).

Plaintiff in this case is Robert Parker. (*Sec. Amend. Compl.* ¶ 12, Doc. 52.) Defendants are (1) James LeBlanc ("LeBlanc"), Secretary of DPSC and "a final policymaker" sued in his individual and official capacities; (2) Ray Hanson, Warden of Richwood Correctional Center and

a "final policymaker . . . sued in his individual and official capacities"; (3) Lasalle Corrections, LLC, who at all relevant times was "Hanson's employer"; (4) Brenda Acklin ("Acklin"), who is "a DOC employee who was tasked with calculating incarceration time ensuring Mr. Parker's proper release date" and who is sued in her individual capacity; (5) "Does 1-10," who are "as-yet-unknown persons involved in the illegal imprisonment of Mr. Parker"; and (6) "ABC Insurance Agencies," who are "as-yet unknown insurance agencies" providing coverage for the Defendants for these claims. (*Id.* ¶¶ 13–19.)  The instant motion is brought only by DPSC, LeBlanc, and Acklin, the "DPSC Defendants."

Plaintiff begins the operative complaint by declaring, "This is a case about Defendants' imprisonment of a man they knew should be free." (*Sec. Amend. Compl.* ¶ 1, Doc. 52.)  Plaintiff then provides case law for the proposition that "jailors may not imprison inmates longer than their sentences." (*Id.* ¶ 2; *see also id.* ¶¶ 3–4.)

 Plaintiff "should have been a free man on October 9, 2017. All Defendants know this because the release date was calculated months in advance according to the DOC's Time Computation & Jail Credit report and the DPS&C Corrections Services Master Record among other reports." (*Id.* ¶ 5.)  But, according to the *Second Amended Complaint*, Plaintiff was held "in prison for an additional and unwarranted **337 days** until September 10, 2018, despite the preemptive and repeated entreaties of Mr. Parker and his lawyers." (*Id.* ¶ 6.)  Plaintiff asserts:

> In fact, as will be discussed in detail below, the DOC's own staff admitted to the over-detention[1] of Mr. Parker is this case. What is worse, although DOC staff conceded to his then 332-day over-detention and need for immediate release, they continued to imprison Mr. Parker for an additional 5 days.

---

[1] "Over-detention" is spelled "overdetention" throughout the *Second Amended Complaint.*  This Court corrects this spelling to "over-detention" throughout this ruling.

(*Id.* ¶ 7.)  "For some unknown reason, when his properly calculated release date arrived, he was not released despite his numerous attempts to correct the issue." (*Id.* ¶ 8.)  "One possible reason for the over-detention is mistakenly classifying him as a sex offender and then failing to release him even after he provided the addresses requested." (*Id.*)

Plaintiff also avers that his experience is not unique or unusual and that this is known by DOC, as evidence by a Louisiana Legislative Auditor report being released while Plaintiff was incarcerated that found that "the DOC had a serious problem of not knowing where its inmates were located, or when their proper release date was." (*Sec. Amend. Compl.* ¶ 9, Doc. 52.)  "DOC's own counsel has admitted the pattern of over-detention," and the *Second Amended Complaint* purports to quote a March 8, 2018, op-ed by Attorney General Jeff Landry on this issue. (*Id.* ¶ 10.) Plaintiff "files this lawsuit to hold the Defendants accountable and to end their practice of imprisoning men and women that should be free." (*Id.* ¶ 11.)

### B.  Plaintiff's Incarceration

#### 1. Overview

On December 21, 2016, Plaintiff was arrested for possible Violation of Protective Orders and held in the Orleans Parish Prison. (*Sec. Amend. Compl.* ¶ 22, Doc. 52.) On January 4, 2017, the Orleans District Attorney refused charges. (*Id.* ¶ 24.)

"On March 27, 2017, [Plaintiff] self-revoked his Probation in Orleans Criminal District Court (Case No. 530-272 B)." (*Id.* ¶ 25.)  He was "sentenced to 2 years . . .  and was given good time credit and credit for time served that would reduce the number of days in prison." (*Id.*)

The operative complaint alleges:

On March 30, 2017, Mr. Parker was transferred from Orleans Parish Prison to DOC custody, where he spent the remainder of his incarceration between the following prisons: River Correctional Center from 3/30/17 to 4/4/17; Madison Detention

21-30446.406

Center from 4/4/17 to 5/30/17; Richwood Correctional Center/BWP from 5/30/17 to 8/29/17; and Richwood Correctional Center from 8/29/17 to 09/10/18.

[ ] On May 4, 2017, the DOC staff member L. Cato computed a Time Computation & Jail Credit report. This report stated that Mr. Parker was Sentenced on 8/16/16; Remanded on 12/21/16; Revoked on 3/27/17 for offenses under R.S. 14:62.3 and R.S. 14:67.B(1); Sentenced to 2 years with 96 days of Jail Credit and additional Good Time Credit under Act 110; and a Must Serve date of 10/09/2017. In addition to stating that the report was "Reported by: L. Cato," handwritten notes on the document show the initials "LC" and the date of "5/4/17."

(*Id.* ¶¶ 26–27.)[2]

## 2. Misclassification as a Sex Offender

Particularly relevant here, Plaintiff alleges that, on or around September 2017, Acklin, who was the "Time Computation Specialist at David Wade Correctional Center, reviewed [Plaintiff's] Time Computation & Jail Credits." (*Sec. Amend. Compl.* ¶ 28, Doc. 52.) "Handwritten notes on the Time Computation & Jail Credits report show the initials 'BA' and the date of '9/17.'" (*Id.*) Further, "handwritten notes on the same document also show that the RAW DS and the ADJ. DS release date of 10/09/2017 was struck out with a pen and the letters 'UNSORP' written above." (*Id.*) The operative complaint alleges, on information and belief, that " 'UNSORP' is an acronym used in reference to residency plans for sex offenders." (*Id.*)

Plaintiff "has never been convicted of a crime for which he would be required to report to the La. Sex Offender Registry," and a search of his name in the relevant state database yields no results. (*Id.* ¶ 29.) Nevertheless, DOC informed Plaintiff that "he was considered a sex offender and would need to provide two physical addresses of friends and/or family where he could live upon release as part of a sex offender residence plan." (*Id.*)

---

[2] The *Second Amended Complaint* also purports to attach a number of exhibits. However, these documents are not attached to this pleading and thus will not be considered by the Court.

21-30446.407

### 3. Attempts to Remedy the Problem

While incarcerated, Plaintiff disputed that he was a sex offender and the requirement that he create a residence plan. (*Sec. Amend. Compl.* ¶ 30, <u>Doc. 52</u>.) He tried to correct the mistake by asking to discuss the issue with Warden Hanson and others at DOC. (*Id.*) On September 4, 2017, he "submitted two Inmate Request Forms to the Richwood Correctional Center ('Richwood') where he was incarcerated" wherein he "asked to speak with Warden Hanson about . . . his release date." (*Id.* ¶ 31.) Both requests were marked "handled" on 9/4/17 by Richwood. (*Id.*) Plaintiff alleges that "Warden Hanson and/or his officers, failed to transfer [Plaintiff's] ARPs to the DOC and/or failed to properly investigate and handle Mr. Parker's complaints in violation of the Administrative Remedy Procedures set for by the [DPSC] and the law." (*Id.* ¶ 32.)

"On October 9, 2017, Mr. Parker was *not* released as legally required, but instead was held an additional 337 days until his eventual release on September 10, 2018." (*Id.* ¶ 33.) Plaintiff claims, "Instead of releasing Mr. Parker, the DPS&C Corrections Services Master Record was amended on 10/9/17 to include " 'Adjusted.: UNSORP' with additional comments that read 'INITIAL TIME COMP DOES NOT HAVE AN APPROVED SEX OFFENDER RESIDENCE PLAN.' " (*Id.* ¶ 34.)

Plaintiff disputed that he was a sex offender, but "he simultaneously attempted to provide DOC with the two addresses they requested so that he could somehow be released from his imprisonment." (*Sec. Amend. Compl.* ¶ 35, <u>Doc. 52</u>.) On November 6, 2017, his 29th day of over-detention, Plaintiff tried again to contact DOC staff about his release date. (*Id.* ¶ 36.) Plaintiff claims:

> He submitted another Inmate Request Form stating that "the reason why I didn't went home just because they say I need a new address[.] I sent Classification an address 2 times and she said she never had recive [sic] it, will you please check to

5

this matter for me[.] Thank you! [M]y time Overdue my,[sic] out date was 10-9-17." The request was marked as "handled" by DOC staff on 11/9/17.

(*Id.*)

On November 26, 2017, his 49th day of over-detention, Plaintiff again tried to address the issue, this time by submitting another Inmate Request Form "asking DOC staff to fax the addresses for his friends and family in the community to be included in his record." (*Id.* ¶ 37.) Plaintiff believed this information "was essential to his being released." (*Id.*) "The request was marked as 'handled' by DOC staff on 11/30/17." (*Id.*)

### C. Plaintiff's Release

On August 24, 2018, the 320th day beyond his release date, Plaintiff's public defender , Aaron Zagory, contacted DOC to ask about the over-detention. (*Sec. Amend. Compl.* ¶ 38, Doc. 52.) Zagory's email was eventually routed to Charles Romero, Supervisor of New Orleans Probation and Parole and Sex Offender Unit, who replied to Zagory's email as follows:

> "Mr. Zagory, You are not mistaken. I double checked the records, and confirmed what you said [in your email]. There was an honest mistake in the investigation, but I have corrected it. I have just notified DOC of the mistake, and that Mr. Parker can be released immediately (assuming there is nothing else holding him there). I informed DOC that Mr. Parker is NOT a sex offender. I will also notify NOPD, so they will not also make the same mistake." (emphasis of capitalization in the original).

(*Id.* ¶ 39.)

On September 7, 2018, Plaintiff's attorney William Most started to contact DOC on Plaintiff's behalf to try to end his overincarceration as quickly as possible. (*Id.* ¶ 40.) On September 10, 2018, Most had not received a response from DOC and renewed his efforts to make contact on Plaintiff's behalf. (*Id.* ¶ 41.) On that day, Plaintiff called Richwood and DWCC and faxed information to Sally Gryder at DOC. (*Id.*)

21-30446.409

"After 337 days of illegal imprisonment, Mr. Parker was finally released to his friends, family and community." (*Id.* ¶ 42.)

### D. DOC's Pattern of Holding Inmates Past their Release Date.

Plaintiff alleges:

[DPSC] has a well-documented pattern of over-detention. For example, in *Chowns v. LeBlanc*, La. 37th JDC 26-932, DOC employees testified as to the consistent over-detention they observed:

a. Tracy Dibenetto, a DOC employee, testified that DOC staff have discovered approximately one case of over-detention per week for the last nine years. Ms. Dibenetto also testified that inmates are sometimes incorrectly incarcerated for periods of up to a year.

b. Henry Goines, a DOC employee whose job was to review sentence computations for the assistant secretary, testified that he typically discovered "one or two [inmates] a week" who were eligible for immediate release.

c. Cheryl Schexnayder, a DOC records analyst, testified that in the course of her job, she had looked at inmates' sentences and found that they had been done wrong and the inmate was entitled to immediate release.

d. Sonja Riddick, a DOC employee, responded to the question: "Did you ever find a time when you looked at an inmate's records and you say, this man should be out now?" with the answer: "Oh yes."

(*Sec. Amend. Compl.* ¶ 43, Doc. 52.)  Plaintiff again quotes Attorney General Landry, who said that there "is a layer of incompetence so deep that the Corrections Department doesn't know where a prisoner is on any given day of the week or when he should actually be released from prison." (*Id.* ¶ 44.)  Plaintiff avers, "After finding no remedy elsewhere, [he] has initiated this action in order to recover their damages." (*Id.* ¶ 45.)

### E. Claims and Prayer for Relief

Count 1 of the *Second Amended Complaint* is for false imprisonment.  (*Id.* ¶¶ 47–53.) Plaintiff claims that the authority to legally detain him ended on October 8, 2017, but he was imprisoned until September 10, 2018, despite the fact that "Defendants had possession of Time

21-30446.410

Computation report with the release date of October 9, 2017," and despite the fact that Plaintiff "made numerous attempts at multiple levels of DOC to notify Defendants of his over-detention." (*Id.* ¶¶ 49–50.)  Indeed, Defendants should have known from an August 24, 2017, email from Plaintiff's counsel, and they conceded Plaintiff's eligibility for release in the email to counsel on September 5, 2018. (*Id.* ¶ 51.)

Count 2 is for negligence.  (*Sec. Amend. Compl.* ¶¶ 54–58, Doc. 52.)  Plaintiff claims Defendants breached their duty to avoid over-detention, and he lists various acts of negligence. (*Id.*)

Count 3 is under 42 U.S.C. § 1983 for a violation of the Due Process Clause of the Fourteenth Amendment.  (*Id.* ¶¶ 59–60.)  Plaintiff claims this clause is violated when someone remains incarcerated after the legal authority to hold him as expired and that this occurred here. (*Id.* (citations omitted).)

Count 4 is for a violation of Article One, Section Two of the Louisiana Constitution of 1974, which guarantees  that "[n]o person shall be deprived of life, liberty, or property, except by due process of law." (*Id.* ¶¶ 61–63.)  This claim parallels Count 3. (*Id.* ¶ 62.)

Count 5 is under *Monell*  and for failure to train and supervise. (*Sec. Amend. Compl.* ¶¶ 64–67, Doc. 52.)  Plaintiff alleges that the above practices are a *de facto* policy which was allowed to happen by the policymaker's deliberate indifference. (*Id.* ¶ 65.)  Plaintiff further claims this was the moving force of constitutional violations. (*Id.* ¶ 66.)

Other claims are against the upper-level defendants.  Count 6 is also for failure to train and supervise and is made against DPSC and LaSalle. (*Id.* ¶¶ 68–70.)  Count 7 is for *respondeat superior* against LeBlanc and LaSalle. (*Id.* ¶¶ 71–72.)  Count 8 is for indemnification against

8

DPSC, LaSalle, LeBlanc, and Hanson. (*Id.* ¶¶ 73–75.)  Count 9 is a direct-action claim against the unknown insurers. (*Id.* ¶ 76.)

Plaintiff seeks, inter alia, declaratory relief, compensatory damages, and "[a] permanent injunction requiring Defendants to end their practice of over-detention[.]" (*Sec. Amend. Compl.* ¶ 78, <u>Doc. 52</u>.)

Plaintiff filed suit on October 15, 2018. (*Pet. for Negligence, False Imprisonment, and Violation of Constitutional Rights ("Pet")*, <u>Doc. 1-3 at 1</u>.)  On November 20, 2018, the action was removed to this Court. (<u>Doc. 1</u>.)

## II.    Relevant Standard

"Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' <u>Fed. R. Civ. P. 8(a)(2)</u>; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, <u>574 U.S. 10, 11</u>, <u>135 S. Ct. 346, 346</u>–47 (2014) (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, <u>565 F.3d 228, 257</u> (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, <u>550 U.S. 544, 556</u>, <u>127 S. Ct. 1955, 1965</u> (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is

whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

In deciding a Rule 12(b)(6) motion, all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted." *Id.* at 503.

### III.    Discussion

#### A.    Prescription of State Law Claim

##### 1. Parties' Arguments

DPSC Defendants first argue that Plaintiff's state law claims have prescribed.  Prescription begins to run on the date he was falsely imprisoned.  His release date should have been October 9, 2017, and he filed suit on October 15, 2018.  Since more than a year passed between the date of false imprisonment and when the suit being filed, Plaintiff's claim has prescribed.

Plaintiff opposes the motion.  First, Plaintiff's injury was "sustained" on November 30, 2017.  DPSC Defendants stated in their Administrative Response forms that Plaintiff's incarceration was conditioned on approval of a residency plan and the addresses he provided, and

10

Plaintiff did not provide those addresses until November 30, 2017. Thus, prescription began to run on that day. Further, even if prescription ran from October 9, 2017, Plaintiff's claim was suspended by *contra non valentem*, as Plaintiff's claim was "lulled into not exercising a cause of action by misrepresentations of . . . Defendants who claimed he was required to meet additional conditions before he could be released." (Doc. 56 at 5.) Plaintiff could not have reasonably known of the date his false imprisonment began because he relied on Defendants' representations. Lastly, prescription was tolled by the filing of Plaintiff's Administrative Remedy Procedure ("ARP") under Louisiana Revised Statute § 15:1172(E), which suspends the running of a claim upon the filing of an ARP until there is a final agency decision. Plaintiff's claims were suspended by at least 9 days by this law, which would make the filing of his petition timely.

DPSC Defendants respond that "Plaintiff's argument regarding the suspension of prescription during the pendency of the Administrative Remedy Procedure, if that argument is accepted as factually accurate, is sufficient to justify denying the Defendants' Motion to Dismiss *without prejudice* to raising the issue of prescription again in a Motion for Summary Judgment." (Doc. 59 at 7.) These defendants dispute, however, Plaintiff's arguments regarding the accrual date and *contra non valentem*.

### 2. Applicable Law

Under Louisiana state law, "[d]elictual actions are subject to a liberative prescription of one year." La. Civ. Code art. 3492. "This prescription commences to run from the day injury or damage is sustained." *Id.* For false imprisonment claims, "the one-year period in which Plaintiff was required to bring his state law claims began to run on the date Plaintiff was allegedly 'falsely imprisoned,' i.e. . . . []the date after Plaintiff's claimed correct release date[]." *Thomas v. Gryder*,

11

No. 17-1595, 2018 WL 4183206, at *5 (M.D. La. Aug. 31, 2018) (citing *Eaglin v. Eunice Police Dept.*, 2017-C-1875, 2018 WL 3154744 (La. June 27, 2018)).

> However, Louisiana Revised Statute § 15:1172 provides in relevant part:

> Liberative prescription for any delictual action for injury or damages arising out of the claims asserted by a prisoner in any complaint or grievance in the administrative remedy procedure shall be suspended upon the filing of such complaint or grievance and shall continue to be suspended until the final agency decision is delivered.

La. Rev. Stat. Ann. § 15:1172(E).

"The period of suspension is not counted toward accrual of prescription. Prescription commences to run again upon the termination of the period of suspension." La. Civ. Code art. 3472.

### 3. Analysis

Plaintiff's correct release date was October 9, 2017. (*Sec. Amend. Compl.* ¶ 33, Doc. 52.) Thus, he was required to file suit by October 9, 2018. Plaintiff filed suit in state court on October 15, 2018. (*Pet.*, Doc. 1-3 at 1.) Thus, Plaintiff's claim has prescribed by six days unless it was otherwise suspended.

Plaintiff's claim was so suspended by the filing of his ARPs. On November 6, 2017, he purportedly submitted an Inmate Request form that was marked "handled" by DOC staff on November 9, 2017. (*Sec. Amend. Compl.* ¶ 36, Doc. 52.) Thus, this led to three days of suspension. Further, on November 26, 2017, he filed another inmate request form that was marked "handled" by DOC staff on November 30, 2017. (*Id.* ¶ 37.) This caused another four days of suspension. Thus, as DPSC Defendants concede, Plaintiff's state law claims have not prescribed, and DPSC Defendants' motion to dismiss on this issue is denied.

12

### B. Claims against DPSC and LeBlanc in his Official Capacity

#### 1. Parties' Arguments

DPSC Defendants next argue that neither DPSC nor LeBlanc, in his official capacity, can be sued for monetary relief under § 1983. Neither are "persons" under that statute. Consequently, all § 1983 claims against them must be dismissed.

Plaintiff responds that DPSC waived its Eleventh Amendment immunity by removing this suit to federal court. Additionally, Louisiana waived sovereign immunity for injuries done to persons. Thus, the state law claims must be preserved. Moreover, Plaintiff's claim for injunctive relief is not barred because it seeks prospective relief. Lastly, Secretary LeBlanc can be sued because he is also named in his individual capacity.

DPSC Defendants respond by reiterating that LeBlanc is not a "person" under § 1983. Further, "any waiver of sovereign immunity by the States is irrelevant to the issue of whether Congress created a cause of action." (Doc. 59 at 2.) Thus, Plaintiff can have no claim against these defendants. As to Plaintiff's claim for injunctive relief under § 1983, DPSC Defendants contend that this claim is moot and that Plaintiff has no standing to assert it because he is no longer in custody. Plaintiff cites Fifth Circuit case law in support of this position. Further, Plaintiff cannot obtain injunctive relief to "end the practice of over-detention" because he must first seek federal habeas corpus relief (or appropriate state relief) instead.

#### 2. Applicable Law

"Section 1983 provides a private right of action for damages to individuals who are deprived of 'any rights, privileges, or immunities' protected by the Constitution or federal law by any 'person' acting under the color of state law." *Stotter v. Univ. of Texas at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007) (quoting 42 U.S.C. § 1983). "The Supreme Court has 'held that a

21-30446.416

State is not a 'person' against whom a § 1983 claim for money damages might be asserted.' " *Med. RX/Sys., P.L.L.C. v. Texas Dep't of State Health Servs.*, 633 F. App'x 607, 610 (5th Cir. 2016) (citing *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 617, 122 S. Ct. 1640, 1643, 152 L. Ed. 2d 806 (2002))  "This rule extends to 'arms of the state,' and to a state's 'officials acting in their official capacities.' " *Id.* (citing *Howlett v. Rose*, 496 U.S. 356, 365, 110 S. Ct. 2430, 110 L. Ed. 2d 332 (1990); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989) ).   Further, this rule applies even when a state waives its Eleventh Amendment immunity by voluntarily removing a suit to federal court. *See Williams v. Louisiana*, No. 17-453, 2019 WL 1003645, at *4 (M.D. La. Feb. 28, 2019) (deGravelles, J.) (finding that Plaintiff's § 1983 claims against DPSC and state officials in their official capacity were barred "as they are not considered 'persons' within the meaning of 42 U.S.C. § 1983"); *Hicks v. Dep't of Pub. Safety & Corr.*, No. 19-108, 2020 WL 428116, at *6 (M.D. La. Jan. 27, 2020) (Dick, C.J.) (finding, despite defendants' removal of the case to federal court, that "to the extent that Plaintiff asserts Section 1983 claims for monetary damages against Defendants in their official capacities, those claims are dismissed with prejudice," and quoting *Williams* at length to arrive at this conclusion).

Nevertheless, "[i]n *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), the Supreme Court carved out an exception to Eleventh Amendment immunity." *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). "The [*Ex Parte Young*] Court held that enforcement of an unconstitutional law is not an official act because a state can not confer authority on its officers to violate the Constitution or federal law." *Id.* (citing *American Bank & Trust Co. of Opelousas v. Dent*, 982 F.2d 917, 920–21 (5th Cir. 1993)). "To meet the *Ex Parte Young* exception, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be

declaratory or injunctive in nature and prospective in effect." *Id.* (citing *Saltz v. Tenn. Dep't of Emp't Sec.*, 976 F.2d 966, 968 (5th Cir. 1992)).

### 3. Analysis

Preliminarily, the Court must emphasize what is not at issue here. First, DPSC Defendants only sought to dismiss Plaintiff's § 1983 claims. (*See* Doc. 53-1 at 3–4 ("All §1983 claims against DPSC and Secretary LeBlanc, in his official capacity, must be dismissed with prejudice."). Thus, contrary to Plaintiff's assertions, the Court will not address his state law claims against these defendants.

Second, DPSC Defendants raise for the first time in their reply brief the issues of standing, mootness, and federal habeas relief. (Doc. 59 at 3–4.) This is well beyond what Plaintiff raised in his opposition by invoking (without naming) *Ex Parte Young*. Because "[r]eply briefs cannot be used to raise new arguments[,]" *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016) (citation omitted), the Court declines to consider these arguments. If DPSC Defendants wish to raise these issues, then they may file an additional motion at a later time so that Plaintiff has an adequate opportunity to respond. Further, as will be addressed below, Plaintiff will be given an opportunity to amend the operative complaint to cure certain deficiencies; when he does so, he should investigate whether he has a good faith basis to assert the official capacity claims in light of DPSC Defendants' arguments and remove them if he finds that he does not.

Turning to the heart of the issue, the Court finds that Plaintiff has no viable § 1983 claim for *monetary damages* against DPSC and LeBlanc in his official capacity because they are not "persons" under § 1983. *See Williams*, 2019 WL 1003645, at *4; *Hicks*, 2020 WL 428116, at *6. These claims must be dismissed.

However, Plaintiff's claim for injunctive and declaratory relief satisfies the *Ex Parte Young* exception.  Plaintiff prays for "[d]eclaratory relief" and "[a] permanent injunction requiring Defendants to end their practice of over-detention[.]" (*Sec. Amend. Compl.* ¶ 78, Doc. 52.) Thus, Plaintiff alleges violations of federal law, brings the suit against a person in his official capacity, and seeks relief that is "declaratory or injunctive in nature and prospective in effect." *Aguilar*, 160 F.3d at 1054 (citation omitted).  Thus, the motion to dismiss this claim is denied without prejudice, subject to any argument DPSC Defendants raise about mootness or federal habeas relief.

### C.  Claims against Acklin

#### 1. Parties' Arguments

DPSC Defendants next argue that Plaintiff alleges only that "Acklin was the time computation specialist at David Wade Correctional Center who reviewed the time computation report of the Plaintiff in September of 2017." (Doc. 53-1 at 5 (citing *Sec. Amend. Compl.* ¶ 28, Doc. 52).)  DPSC Defendants argue that this does not state a viable claim and that "reviewing a time computation report is not objectively unreasonable conduct in light of clearly established law." (*Id.*)

Plaintiff responds that there is a clearly established right to timely release of prisoners and that jailers have a duty to ensure that prisoners are timely released. (Doc. 56 at 11 (citation omitted).)  Plaintiff distinguishes *Thomas v. Gryder*, No. 17-1595, a case from this district finding that a defendant was entitled to qualified immunity when she "rel[ied] on *correct* information from the District Attorney and the state's minute entries in making her release date calculations." (Doc. 56 at 11.) Plaintiff explains that, here, Acklin did not rely on correct information.  Rather, there was no justification for holding Plaintiff past his release date.  "A simple search of Mr. Parker's conviction, his sentence, or the Louisiana sex-offender registry, should have made it immediately

16

clear to Ms. Acklin that Mr. Parker should not have been held on further conditions." (*Id.* at 12.) "Even if their violation was not intentional, the Defendants' failure to conduct even the most basic investigation into the proper release date, or to exercise due care in conditioning his release, rises to the level of reckless disregard for the rights of Mr. Parker" (*Id.*)

DPSC Defendants respond, "to overcome the defense of qualified immunity, the Plaintiff must come forth with citations to cases in which the court found similar conduct violated the constitutional right of a prisoner to timely release from prison." (Doc. 59 at 6.)  Plaintiff cites a single case, *Thomas*, but, there, the court founds that the defendant was entitled to qualified immunity for an over-detention as to certain claims but that there was a question of fact "regarding when Ms. Gryder knew she had recalculated Plaintiff's release date based on incorrect information." (*Id.* (quoting *Thomas v. Gryder*, No. 17-1595, 2019 WL 5790351, at *8 (M.D. La. Nov. 6, 2019).)  DPSC asserts that, under *Thomas*, "the time computation officer can only be held liable for failing to order the prisoner's release after she knew his sentence computation was based on erroneous or mistaken information." (*Id.*)  Here, Ms. "Acklin's alleged involvement in the Plaintiff's sentence computation occurred in September, 2017, one year before the 'honest mistake' was found and reported to DPSC; there was no alleged involvement by Ms. Acklin in the Plaintiff's sentence computation thereafter." (*Id.* at 7.)  Thus, DPSC Defendants say she is entitled to qualified immunity.

### 2. Applicable Law

"Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (citing *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034, 97 L.

17

Ed. 2d 523 (1987) ). "In determining whether an official enjoys immunity, we ask (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and (2) whether the official's actions violated that right to the extent that an objectively reasonable person would have known." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002) ). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

As to the second prong of the analysis, " '[q]ualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Kisela v. Hughes*, 138 S. Ct. 1148, 1152, 200 L. Ed. 2d 449 (2018) (per curiam) (quoting *White v. Pauly*, 137 S. Ct. 548, 551, 196 L.Ed. 2d 463 (2017) (per curiam ) (alterations and internal quotation marks omitted) ). " 'Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.' " *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (per curiam ) ).

"Although '[the Supreme] Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.' " *Id.* (quoting *White*, 137 S. Ct. at 551 (internal quotation marks omitted) ). " 'In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law.' " *Id.* (quoting *White*, 137 S. Ct. at 551 (internal quotation marks omitted)).

" 'Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers.' " *Kisela*, 138 S. Ct. at 1153 (quoting *White*, 137 S. Ct. at 552 (internal

18

quotation marks omitted) ). "But . . . [a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.' " *Id.* (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778–79, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056 (2014) ). "That is a necessary part of the qualified-immunity standard[.]" *Id.*

As to the first prong of the qualified immunity analysis, "[d]etention of a prisoner for over 'thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process.' " *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (quoting *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980)).  Fifth Circuit "precedent establishes that a jailer has a duty to ensure that inmates are timely released from prison." *Id.*  This circuit has also stated:

> "[w]hile not a surety for the legal correctness of a prisoner's commitment, [a jailer] is most certainly under an obligation, often statutory, to carry out the functions of his office. Those functions include not only the duty to protect a prisoner, but also the duty to effect his timely release.

*Id.* (quoting *Whirl v. Kern*, 407 F.2d 781, 792 (5th Cir. 1969) (internal citations and footnote omitted)).

"Despite the defense of qualified immunity, '[i]f [the jailer] negligently establishes a record keeping system in which errors of this kind are likely, he will be held liable.'" *Id.* at 446 (quoting *Bryan v. Jones*, 530 F.2d 1210, 1215 (5th Cir. 1976) (en banc)). "[T]he Fifth Circuit has recognized that a jailer is 'under relatively little time pressure' and 'has the means, freedom, and the duty to make necessary inquiries.' " *Thomas v. Gryder*, No. 17-1595, 2019 WL 5790351, at *7 (M.D. La. Nov. 6, 2019) (quoting *Douthit*, 619 F.2d at 535 (quoting *Whirl*, 407 F.2d at 792, and *Bryan*, 530 F.2d at 1214)).

19

However, "[a] defense of official immunity is available to a jailer who has acted in reasonable good faith." *Id.* (quoting *Bryan*, 530 F.2d at 1214). Moreover, "a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right" *Id.* (quoting *Lewis v. Sec'y of Pub. Safety and Corr.*, 870 F.3d 365, 369 (5th Cir. 2017)). "[N]egligent conduct does not implicate the due process clause." *Id.* (quoting *Salas v. Carpenter*, 980 F.2d 299, 307 (5th Cir. 1992)). Ultimately, the "determination of whether a jailer violates the Due Process Clause by unduly detaining an individual depends on 'the context of this case.' " *Id.* (quoting *Grant v. Guzman*, No. 17-2797, 2018 WL 1532960, at *12 (E.D. La. Mar. 29, 2018) (quoting *Douthit*, 619 F.2d at 532)).

Thus, for example, in *Thomas v. Gryder*, a case on which both parties now rely, plaintiff filed suit after being allegedly imprisoned 589 days past the end of his sentence. 2019 WL 5790351, at *1. Plaintiff claimed "the DOC originally calculated his release date correctly as June 5, 2015[.]" *Id.* During plaintiff's confinement, Defendant Gryder recalculated his confinement times four times. *Id.* at *2. In May 2015 (the fourth occasion), she was "double checking" plaintiff's anticipated June 2015 release, and she "sought clarification after she noticed that the Bill of Information and Sentencing Order ordered Plaintiff's charges differently." *Id.* at *3. She contacted the Orleans Parish District Attorney's office about the discrepancy, spoke with an Assistant DA, and was told that plaintiff was sentenced to five years on the sexual battery conviction. *Id.* On May 7, 2015, an amended minute entry was entered on the criminal docket reflecting that he was sentenced on 1/25/13 for 5 years. *Id.* Gryder then contacted the DA's office again to confirm the five-year sentence, and, on May 11, 2015, the Assistant DA responded, " 'The updated minute entry is correct. I can send you a certified copy, if that would be helpful.' " *Id. Thomas* explained, "Ms. Gryder then recalculated Plaintiff's release date to be February 28, 2017. It is undisputed that

20

sexual battery is not subject to any good time reductions and that if Plaintiff had been sentenced to five years for sexual battery, his release date would have been February 28, 2017." *Id.*

Plaintiff then sent letters to Gryder and the Warden objecting to the new release date. *Thomas*, 2019 WL 5790351, at *3. Plaintiff eventually filed a motion for correction with the criminal court, and the court issued the July 2016 Order correcting the problem. *Id.* Gryder testified that she did not receive the order until litigation, but Plaintiff submitted a declaration saying he sent the order to her on August 17, 2016. *Id.* Plaintiff sent Brenda Acklin a copy of the letter and sentencing transcript on December 5, 2016, and Gryder stated that she realized that Plaintiff should have been released in "early December, 2016." *Id.* After receiving the transcript, Gryder sent an email to the Assistant DA asking for an updated minute entry and processed Plaintiff for release in January 2017. *Id.* at *4. Plaintiff was eventually released on January 13, 2017. *Id.*

The magistrate judge found that, "[b]ecause it was not objectively unreasonable for Ms. Gryder to seek clarification in the first place, it was not objectively unreasonable for Ms. Gryder to rely on that clarification once received." *Id.* at *7. The court further explained:

> where the amended minute entry and confirmation from the DA occurred in response to Ms. Gryder's request for clarification, it would be especially inconsistent to require that Ms. Gryder continue to rely on the earlier Sentencing Order, and the Court finds that constitutional minima are met where Ms. Gryder sought to be *more* conscientious rather than less with respect to her calculation of Plaintiff's release date.

*Id.* However, the magistrate judge found that there was a question of fact concerning the date on which Gryder "knew that this fourth recalculation was based on inaccurate information." *Id.* at *8. Gryder said she did not know about the July 2016 order until litigation began, but Plaintiff submitted evidence that she sent the order to her on August 17, 2016. *Id.* "Plaintiff was not

released until almost five months after he allegedly provided Ms. Gryder with official, corrected information." *Id.*  The magistrate judge concluded:

> While the question here is not as clear cut as that set out in *Whirl* [(where an almost nine-month delay was found to be unreasonable)], based on the timeline of "clarifications" from the criminal court and the Assistant DA, Plaintiff has raised a material issue of fact regarding when Ms. Gryder knew she had recalculated Plaintiff's release date based on incorrect information. Accordingly, while the Court finds that Ms. Gryder is entitled to qualified immunity for Plaintiff's over-detention from June 5, 2015 through August 17, 2016 and therefore summary judgment dismissing Plaintiff's claims against Ms. Gryder for that period of time is appropriate, a genuine issue of material fact precludes summary judgment in favor of Ms. Gryder for the time period of August 18, 2016 through January 13, 2017.

*Id.*

### 3. Analysis

The Court finds that Plaintiff has stated a viable claim against Acklin. Again, Plaintiff alleges that Acklin is "a DOC employee who was tasked with calculating incarceration time ensuring Mr. Parker's proper release date." (*Sec. Amend. Compl.* ¶ 17, Doc. 52.)  Plaintiff further alleges that, "All Defendants [knew his correct release date] because the release date was calculated months in advance according to the DOC's Time Computation & Jail Credit report and the DPS&C Corrections Services Master Record among other reports." (*Id.* ¶ 5.)  On or around September 2017, Acklin, the "Time Computation Specialist at David Wade Correctional Center, reviewed [Plaintiff's] Time Computation & Jail Credits." (*Id.* ¶ 28.)  "Handwritten notes on the Time Computation & Jail Credits report show the initials 'BA' and the date of '9/17.'" (*Id.*) Further, "handwritten notes on the same document also show that the RAW DS and the ADJ. DS release date of 10/09/2017 was struck out with a pen and the letters 'UNSORP' written above." (*Id.*)  The operative complaint alleges, on information and belief, that " 'UNSORP' is an acronym used in reference to residency plans for sex offenders." (*Id.*)  According to the *Second Amended Complaint,* Plaintiff "has never been convicted of a crime for which he would be required to report

22

to the La. Sex Offender Registry," and a search of his name in the relevant state database yields no results. (*Id.* ¶ 29.) Nevertheless, DOC informed Plaintiff that "he was considered a sex offender and would need to provide two physical addresses of friends and/or family where he could live upon release as part of a sex offender residence plan." (*Id.*) This error directly led to his over-detention.

Assuming these allegations to be true, a jury could reasonably conclude that Acklin had the correct information in Plaintiff's reports that he had never been convicted of a crime for which he had to register as a sex offender but that, despite this, Acklin made the notation in his file requiring him to have a residency plan as a sex offender. This is critical because, in *Thomas*, the Court found that the defendant was not entitled to qualified immunity for those days for which she allegedly had correct information about the plaintiff's release date. *Thomas*, 2019 WL 5790351, at *7–8. By the same reasoning, Acklin is not entitled to qualified immunity here.

Further, unlike *Thomas*, this is not an instance where Acklin was "more conscientious" about calculating Plaintiff's release date than would otherwise be required. Indeed, *Thomas* states that, according to the Fifth Circuit, "a jailer is 'under relatively little time pressure' and 'has the means, freedom, and the duty to make necessary inquiries.' " *Id.* at *7 (quotation omitted). This is critical because Plaintiff specifically alleges that a search of the relevant database would demonstrate that Plaintiff was not a sex offender, and a reasonable juror could conclude that, by failing to verify this information, Acklin breached her "duty to make necessary inquiries." *Id.*

It must be emphasized that the question is not whether Plaintiff will prevail at trial against Acklin. The only question at this stage is whether the *Second Amended Complaint* contains enough factual matter (taken as true) to raise a reasonable hope or expectation that discovery will reveal relevant evidence of each element of a claim. *Lormand*, 565 F.3d at 257. Plaintiff has met that

23

burden at this stage.  As alleged, Acklin's conduct was objectively unreasonable under clearly established law, so DPSC Defendant's motion must be denied.

### D.  Claims against LeBlanc in his Individual Capacity

#### 1. Parties' Arguments

DPSC Defendants next assert that LeBlanc is entitled to qualified immunity.  These defendants argue that the only allegation against LeBlanc is that he is "liable as [a] principal for all torts committed by [his] agents." (Doc. 53-1 at 5.)  But vicarious liability is inapplicable to § 1983, so Plaintiff's claim against LeBlanc must be dismissed.

Plaintiff responds that LeBlanc can be liable for implementing unconstitutional policies and for failing to train or supervise if he acted with deliberate indifference.  Plaintiff claims that he alleges a pattern of over-detention at DPSC under LeBlanc's direction and that LeBlanc knew about this over-detention but acted with deliberate indifference.  Further, this pattern is objectively unreasonable under clearly established law, as prison officials must ensure the timely release of inmates.

DPSC Defendants respond that Plaintiff lumps all defendants together but does not make specific allegations against LeBlanc.  These defendants argue that none of the factual allegations relied on by Plaintiff in his opposition are made in the operative complaint, and Plaintiff provides no citations to any of these arguments.

#### 2. Applicable Law - Supervisor Liability

As to the constitutional violation prong, "[u]nder section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Simon v. LeBlanc*, 694 F. App'x 260, 261 (5th Cir. 2017) (per curiam) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987) ). " 'A supervisory official may be held liable . . . only if (1) he affirmatively

participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury.' " *Porter*, 659 F.3d at 446 (quoting *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008) ). "In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Id.* (quoting *Gates*, 537 F.3d at 435 (internal quotation marks and citation omitted, alterations and emphasis in *Gates* )).

"A pattern is tantamount to official policy when it is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.' " *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)). "Where prior incidents are used to prove a pattern, they 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.' " *Id.* (quoting *Webster, 735 F.2d at 842*). "It is thus clear that a plaintiff must demonstrate 'a pattern of  abuses that transcends the error made in a single case.' " *Id.* at 850–51 (quoting *Piotrowski*, 237 F.3d at 582 (citations omitted)). "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.' " *Id.* at 851 (quoting *Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 383 (5th Cir. 2005)).

" '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Estate of Davis*, 406 F.3d at 381 (quoting *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410, 117 S. Ct.

1382, 137 L. Ed. 2d 626 (1997) ). " 'For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Id.* (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998)). "Deliberate indifference requires a showing of more than negligence or even gross negligence." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc) ). " 'Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity.' " *Id.* (quoting *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)).

Additionally, "[a] failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Porter*, 659 F.3d at 446 (quoting *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992)). Nevertheless, "[l]iability for failure to promulgate policy . . . require[s] that the defendant . . . acted with deliberate indifference." *Id.* As the Fifth Circuit stated with respect to "failure-to-train" claims (and, by "logical" analogy, failure-to-promulgate claims):

> To establish that a state actor disregarded a known or obvious consequence of his actions, there must be actual or constructive notice that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights and the actor nevertheless chooses to retain that program. A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference, because without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. Without cabining failure-to-train claims in this manner (or, logically, failure-to-promulgate-policy claims), a standard less stringent than deliberate indifference would be employed, and a failure-to-train claim would result in *de facto respondeat* superior liability.

*Id.* at 447 (citations, alterations, and quotations omitted).

26

### 3. Analysis

The Court finds that Plaintiff has failed to state a viable claim of supervisor liability against LeBlanc.  Again, " '[a] supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury.' " *Porter*, 659 F.3d at 446. Plaintiff must typically allege a pattern of violations. *Id.* at 447.  "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.' " *Peterson*, 588 F.3d at 851 (quoting *Estate of Davis,* 406 F.3d at 383).

> Here, Plaintiff fails to satisfy that standard.  Again, Plaintiff alleges:
>
> [DPSC] has a well-documented pattern of over-detention. For example, in *Chowns v. LeBlanc*, La. 37th JDC 26-932, DOC employees testified as to the consistent over-detention they observed:
>
> a. Tracy Dibenetto, a DOC employee, testified that DOC staff have discovered approximately one case of over-detention per week for the last nine years. Ms. Dibenetto also testified that inmates are sometimes incorrectly incarcerated for periods of up to a year.
>
> b. Henry Goines, a DOC employee whose job was to review sentence computations for the assistant secretary, testified that he typically discovered "one or two [inmates] a week" who were eligible for immediate release.
>
> c. Cheryl Schexnayder, a DOC records analyst, testified that in the course of her job, she had looked at inmates' sentences and found that they had been done wrong and the inmate was entitled to immediate release.
>
> d. Sonja Riddick, a DOC employee, responded to the question: "Did you ever find a time when you looked at an inmate's records and you say, this man should be out now?" with the answer: "Oh yes."

(*Sec. Amend. Compl.* ¶ 43, Doc. 52.)  Plaintiff also quotes Attorney General Landry, who said that there "is a layer of incompetence so deep that the Corrections Department doesn't know where a prisoner is on any given day of the week or when he should actually be released from prison." (*Id.*

21-30446.430

¶ 44.)  Lastly, Plaintiff refers to the Louisiana Legislative Auditor report being released while Plaintiff was incarcerated that found that "the DOC had a serious problem of not knowing where its inmates were located, or when their proper release date was." (*Id.* ¶ 9.)

While these allegations are serious and reflect numerous instances of misconduct, Plaintiff fails to provide the necessary "similarity and specificity" required by the Fifth Circuit; there is no indication from the *Second Amended Complaint* that the above problems detailed above are similar to the ones faced by Plaintiff.

*Thomas v. Gryde* is analogous on this issue as well.  Again, Plaintiff filed suit after being allegedly imprisoned 589 days past the end of his sentence. *Thomas*, 2019 WL 5790351 at *1. Plaintiff brought a supervisory liability claim against LeBlanc and the warden claiming that they implemented unconstitutional policies. *Id.* at *9.  Plaintiff argued that " 'the DOC has investigated and admitted that it has been over-detaining hundreds of inmates per month, more than sufficient to hold LeBlanc and Goodwin liable under *Monell/Hinojosa*.' " *Id.* at *10.  To support his position, Plaintiff pointed to, *inter alia*, "a 2012 study conducted by Louisiana DOC staff . . .  wherein, per Plaintiff, it was 'found that as of January 2012, the DOC had a "1446 backlog of cases to have time computed," resulting in an average processing delay of 110 days.' " *Id.*  Plaintiff also referred to an audit of the DOC and the Attorney General's op-ed. *Id.*

Despite this evidence, the Court granted summary judgment on this claim, explaining that "Plaintiff's over-detention does not involve such concerns." *Id.*  The Court stated:

> [Unlike the evidence submitted by Plaintiff,] this is not a case involving a delay in Plaintiff's sentence calculation, or an error in that calculation. Instead, Plaintiff complains that in calculating his release date, Ms. Gryder improperly relied on information that was wrong. Because Plaintiff has presented no evidence to support a finding that Warden Goodwin or Secretary LeBlanc were deliberately indifferent based on a pattern of sufficiently similar incidents, Defendants are entitled to summary judgment dismissing [Plaintiff's claim].

*Id.*

Similar reasoning applies here.  The *Second Amended Complaint* lacks adequate detail from which the Court can plausibly conclude that the other described incidents are sufficiently similar to what befell Plaintiff or that the same or sufficiently underlying cause is to blame.  Indeed, Plaintiff provides no detail about these other incidents and essentially says only that over-detention is ubiquitous.  Without more, Plaintiff's claim must fail.

Plaintiff's claim also fails for an additional reason.  Again, " '[i]n order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates.' " *Porter*, 659 F.3d at 446.  Deliberate indifference requires more than negligence or even gross negligence. *Estate of Davis*, 406 F.3d at 381.  LeBlanc " must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

The Court finds that Plaintiff has, at this point, failed to adequately allege deliberate indifference.  Plaintiff points to a state court law suit where DPSC employees testified about the deficiencies, but he fails to link this suit and this pattern to LeBlanc in such a way to establish that LeBlanc actually drew the inference that there was a substantial risk of harm to Plaintiff and other inmates.  Further, Plaintiff alleges that Attorney General Landry was aware of the problem and that there was a Louisiana Audit report documenting it, but he fails to allege, even on information and belief, that LeBlanc was aware of what Landry said in the op-ed or of what was contained in the audit.  Without more, Plaintiff is effectively arguing for respondeat superior liability, which is improper under § 1983.

29

However, for reasons given more extensively below, the Court believes that there is a reasonable probability that Plaintiff can cure the deficiencies in the *Second Amended Complaint* by explaining the similarity of other incidents to Plaintiff's case and by establishing LeBlanc's knowledge and the basis thereof. Accordingly, Plaintiff will be given leave to amend the complaint to cure the above problems.[3]

### E. Leave to Amend

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955). The Fifth Circuit has further stated: "In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Relying on *Great Plains* and other cases from this circuit, one district court in Texas articulated the standard as follows:

> When a complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend before dismissing the action with prejudice unless it is clear that the defects in the complaint are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir. 2002); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.,* 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion.")

---

[3] The Court notes that, while Plaintiff is not entitled to discovery on the individual capacity claim because he failed to allege sufficient facts to overcome qualified immunity, *see Zapata v. Melson*, 750 F.3d 481, 484–85 (5th Cir. 2014), that bar does not apply to Plaintiff's official capacity claim, which in this case informs the individual capacity claim against LeBlanc. Plaintiff appears able to obtain discovery on this issue, within the parameters established by the Magistrate Judge.

(internal citation omitted). However, a court may deny leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed.1990) (footnote omitted); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.,* 195 F.3d 765, 771 (5th Cir. 1999) ("A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.") (footnote omitted).

*Tow v. Amegy Bank N.A.*, 498 B.R. 757, 765 (S.D. Tex. 2013).

> Finally, one leading treatise explained:

> As the numerous case[s] . . . make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016).

As stated above, the Court believes there is a reasonable probability that the Plaintiff could cure the deficiencies in the *Second Amended Complaint* through an amendment. Further, "[w]hile Plaintiff previously amended [his] complaint, [he] did not do so in response to a ruling by this Court assessing the sufficiency of Plaintiff's claims. Thus, . . . the Court will act in accordance with the 'wise judicial practice' and general rule and grant Plaintiff[]" leave to amend. *JMCB, LLC v. Bd. of Commerce & Indus.*, 336 F. Supp. 3d 620, 642 (M.D. La. 2018).

31

## IV.    Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss* (Doc. 53) is **GRANTED IN PART** and **DENIED IN PART**.  The motion is granted in that the following claims are **DISMISSED WITHOUT PREJUDICE**: (1) Plaintiff's § 1983 claim for monetary damages against LeBlanc in his official capacity, and (2) Plaintiff's § 1983 claims against LeBlanc in his individual capacity. In all other respects, the motion is **DENIED**.  Plaintiff shall be given twenty-eight (28) in which to cure the operative complaint of these deficiencies.  Failure to do so will result in the dismissal of these claims with prejudice.

Signed in Baton Rouge, Louisiana, on July 29, 2020.


_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

32

TAB 4

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| ROBERT PARKER, | ) |
| | ) |
| Plaintiff, | ) **Civil Action** |
| v. | ) |
| | ) **NO. 18-1030-JWD-EWD** |
| LOUISIANA DEPARTMENT | ) |
| OF PUBLIC SAFETY AND | ) |
| CORRECTIONS, *ET AL.*, | ) |
| | ) |
| Defendants. | ) |

### THIRD AMENDED COMPLAINT FOR NEGLIGENCE, FALSE IMPRISONMENT, and VIOLATION OF CONSTITUTIONAL RIGHTS

NOW INTO COURT, through undersigned counsel, comes Plaintiff Robert Parker, who hereby files this Third Amended Complaint against Defendants the State of Louisiana, through the Department of Public Safety and Corrections ("DPSC" or "DOC"), James LeBlanc, individually and in his official capacity as Secretary of DPSC, and Brenda Acklin (collectively, the "DPSC Defendants"), Warden Ray Hanson, Lasalle Corrections, LLC, Does 1-10 and ABC Insurance Agencies (collectively, the "Defendants").

### PRELIMINARY STATEMENT

1. Plaintiff filed his Original Complaint in the 19th Judicial District Court for the State of Louisiana, which was removed to the United States District Court for the Middle District of Louisiana (Doc. 1). Plaintiff subsequently requested and was granted leave to file the First Amended Complaint in order to add Defendant LaSalle Corrections, LLC (Doc. 23, Doc. 26, ¶ 15). Plaintiff filed a Second Amended Complaint which incorporated all allegations of the First Amended Complaint and added further allegations about the Defendants classification of the Plaintiff as a sex offender, as well as allegations regarding Defendant Hanson, Defendant LaSalle Corrections, LLC, and Defendant DPSC's failure to prevent deprivations of Plaintiff's rights (See Doc. 52, ¶ 8, 32, 56).

2. This Honorable Court's Ruling and Order (Doc. 65) gave Plaintiff leave to further amend the complaint in order to cure certain deficiencies. Plaintiff's Third Amended Complaint hereby adopts and incorporates by reference the allegations contained in the preceding First Amended Complaint and Second Amended Complaint except that in this Third Amended Complaint Plaintiff: (1) no longer asserts a § 1983 claim for monetary damages against Defendant LeBlanc in his official capacity, and (2) reasserts with specificity the *Monell* claim against Defendant LeBlanc in his individual capacity.

**BACKGROUND**

3.  This is a case about Defendants' imprisonment of a man they knew should be free.

4.  According to black-letter law, jailors may not imprison inmates longer than their sentences. Recent Fifth Circuit precedent recognized that "There is a Clearly Established Right to Timely Release from Prison."[1]

5.  Once a prisoner's sentence has expired, his jailor has reasonable amount of time to process and release him. Courts have repeatedly held that the phrase "reasonable time" means some amount of time less than 48 hours.[2] In other words, an inmate who as already served his court-ordered sentence must be released within a reasonable time not to exceed two days. A minute more is unconstitutional and illegal.

6.  A jury is often asked to decide whether an over detention of *less* than 48 hours is constitutional,[3] and juries have found that delay of as little as thirty minutes is unconstitutional.[4] But courts across the country have held, unequivocally, that a detention *beyond* 48 hours of an inmate's known sentence is unreasonable and illegal. Indeed, "[t]he court has been unable to find **any case**. . . in which the detainment of a properly identified individual for *days* beyond his scheduled release date was held constitutionally permissible."[5]

7.  Petitioner Robert Parker should have been a free man on October 9, 2017. All Defendants know this because the release date was calculated months in advance according to the DOC's Time Computation & Jail Credit report and the DPS&C Corrections Services Master Record among other reports.

8.  But they did not set him free on his release date of October 9, 2017. Instead, they held him in prison for an additional and unwarranted **337 days** until September 10, 2018, despite the preemptive and repeated entreaties of Mr. Parker and his lawyers.

9.  In fact, as will be discussed in detail below, the DOC's own staff admitted to the over-detention of Mr. Parker is this case. What is worse, although DOC staff conceded to his then 332-

---

[1] *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (emphasis in the original).
[2] *Barnes v. District of Columbia*, 793 F. Supp. 2d 260 (D.D.C. 2011) ("In recognition of these facts, courts appear to agree that the maximum permissible administrative delay in the over-detention context likely falls well short of the 48-hour horizon set out in *McLaughlin*."). That is because once a detainee is ordered released, the public's interest in his prompt release is even greater, and the constitutional tolerance for "administrative delay" is substantially less than in the context of arrestees awaiting probably cause determinations—which must come within 48 hours. *See Berry v Baca*, 379 F. 3d 764, 771-72 (9th Cir. 2004); *Powell v Barrett*, 376 F. Supp.2d 1340, 1353 (N.D.Ga. 2005).
[3] *Berry v. Baca*, 379 F.3d 764, 77072 (9th Cir. 2004) (twenty-nine hour delay presented question for jury); *Arline v City of Jacksonville*, 359 F.Supp.2d 1300, 1310 (M.D.Fla. 2005) (two and a half hour delay presented jury question.)
[4] *Davis v. Hall*, 375 F.3d 703, 713 (8th Cir. 2004).
[5] *Powell v. Barrett*, 376 F. Supp.2d 1340, 1354 (N.D.Ga. 2005) (Bolded emphasis added).
Parker v. DOC et al., Petition for Negligence,
False Imprisonment and
Violation of Constitutional Rights

day over-detention and need for immediate release, they continued to imprison Mr. Parker for an additional 5 days.

10. In other words, despite his release date being properly calculated on the jail forms, he was not released for 337 days. For some unknown reason, when his properly calculated release date arrived, he was not released despite his numerous attempts to correct the issue. One possible reason for the over-detention is mistakenly classifying him as a sex offender and then failing to release him even after he provided the addresses requested. The facts of this case point to the liability of all Defendants for holding Mr. Parker without cause well past his properly calculated release date that was clearly stated on all the jail forms.

11. Unfortunately, Mr. Parker's experience of being held past his release date is neither unique nor even unusual in Louisiana—and the DOC knows it. In fact, during the very time period Mr. Parker was incarcerated, the Louisiana Legislative Auditor released a report finding that the DOC had a serious problem of not knowing where its inmates were located, or when their proper release date was.[6]

12. The DOC's own counsel has admitted the pattern of over-detention. On March 8, 2018, Attorney General Jeff Landry wrote an op-ed conceding that there "**is a lawyer of incompetence so deep that the Corrections Department doesn't know where a prisoner is on any given day of the week or when he should actually be released from prison.**"[7]

13. These problems have real consequences for people like Mr. Parker and cannot be allowed to continue. Mr. Parker files this lawsuit to hold the Defendants accountable and to end their practice of imprisoning men and women that should be free.

## PETITIONER

14. Petitioner Robert Parker is a person of the full age of majority maintaining a residence in New Orleans, LA. Upon information and belief, he respectfully represents the facts and causes of action pled herein against the Defendants.

## DEFENDANTS

15. <u>Louisiana Department of Public Safety & Corrections</u> ("DPSC" or "DOC") is a governmental entity of the State of Louisiana.

---

[6] Louisiana Legislative Auditor Daryl G. Purpera, CPA, "CFE Management of Offender Data: Processes for Ensuring Accuracy Department of Corrections," October 2017.
[7] Sen. John Kennedy and Att. Gen. Jeff Landry, *Criminal justice reform actually hurting public safety*, The Advocate (Mar. 8, 2018) (emphasis added).
Parker v. DOC et al., Petition for Negligence,
False Imprisonment and
Violation of Constitutional Rights

16. <u>James LeBlanc</u> is the Secretary for the Louisiana Department of Public Safety & Corrections and a final policymaker. He is sued in his individual capacity.

17. <u>Ray Hanson</u> was the Warden of Richwood Correctional Center for the Louisiana Department of Public Safety & Corrections and a final policy maker during Mr. Parker's over-detention. He is sued in his individual capacity.

18. <u>Lasalle Corrections, LLC</u> is a limited liability corporation authorized to do business in Louisiana and which can be served through its registered agent for service William K. McConnell at 192 Bastille Lane, Suite 200, Ruston, LA 71270. Lasalle Corrections, LLC was at all times relevant to this lawsuit the employer of defendant Ray Hanson and is liable for its employee's negligent actions or omissions that occurred during the course and scope of the employee's employment and/or for these foreseeable actions or omissions and/or for not providing proper training and/or supervision for their employees to prevents situations as the ones described in this complaint.

19. <u>Brenda Acklin</u> is a DOC employee who was tasked with calculating incarceration time ensuring Mr. Parker's proper release date. She is sued in her individual capacity.

20. <u>Does 1-10</u> are as-yet-unknown persons involved in the illegal imprisonment of Mr. Parker.

21. <u>ABC Insurance Agencies</u> are as-yet-unknown insurance agencies doing business in this State who provide or provided insurance that covered the Defendants against the kinds of claims pled herein.

## JURISDICTION AND VENUE

22.  Jurisdiction is proper in this Court because the Court maintains subject matter jurisdiction over the dispute based on the object of the demand and the amount in controversy.

23.  Venue is proper in this Court pursuant to La. R.S. 13:5104.

## BACKGROUND AND FACTS

### A.  <u>Robert Parker was held for 337 days past his court-ordered release date.</u>

24.  On December 21, 2016 Mr. Parker was arrested for possible Violation of Protective Orders by the New Orleans Police and held in the Orleans Parish Prison. He was represented by a Public Defender.

25. On December 22, 2016, a Rule to Show Cause was set regarding Mr. Parker's potential violation of Probation that he was sentenced to on August 8, 2016, for a previous conviction.

26. On January 4, 2017 the Orleans District Attorney refused charges for possible Violation of Protective Orders.

27. On March 27, 2017, Robert Parker self-revoked his Probation in Orleans Criminal District Court (Case No. 530-272 B). Mr. Parker was sentenced to 2 years for revoking his probation, and was given good time credit and credit for time served that would reduce the number of days in prison.

28. On March 30, 2017, Mr. Parker was transferred from Orleans Parish Prison to DOC custody, where he spent the remainder of his incarceration between the following prisons: River Correctional Center from 3/30/17 to 4/4/17; Madison Detention Center from 4/4/17 to 5/30/17; Richwood Correctional Center/BWP from 5/30/17 to 8/29/17; and Richwood Correctional Center from 8/29/17 to 09/10/18.

29. On May 4, 2017, the DOC staff member L. Cato computed a Time Computation & Jail Credit report. This report stated that Mr. Parker was Sentenced on 8/16/16; Remanded on 12/21/16; Revoked on 3/27/17 for offenses under R.S. 14:62.3 and R.S. 14:67.B(1); Sentenced to 2 years with 96 days of Jail Credit and additional Good Time Credit under Act 110; and a Must Serve date of 10/09/2017. In addition to stating that the report was "Reported by: L. Cato," handwritten notes on the document show the initials "LC" and the date of "5/4/17." **See Plaintiff's Exhibit A.**

30. On information and belief, on or around September 2017, Brenda Acklin, the Time Computation Specialist at David Wade Correctional Center, reviewed the Time Computation & Jail Credits for Mr. Parker. Handwritten notes on the Time Computation & Jail Credits report show the initials "BA" and the date of "9/17." In addition, handwritten notes on the same document also show that the RAW DS and the ADJ. DS release date of 10/09/2017 was struck out with a pen and the letters "UNSORP" written above. On information and belief, "UNSORP" is an acronym used in reference to residency plans for sex offenders. **See Plaintiff's Exhibit A.**

31. Mr. Parker has never been convicted of a crime for which he would be required to report to the La. Sex Offender Registry. Indeed, a search of the La. State Police Sex Offender Registry finds no results for "Robert Parker" in Orleans Parish. Nevertheless, Mr. Parker was informed by DOC that he was considered a sex offender and would need to provide two physical addresses of friends and/or family where he could live upon release as part of a sex offender residence plan.

32. During his incarceration, Mr. Parker disputed the allegation that he was a sex offender and that he was required to create a residence plan. In attempt to preemptively correct the mistake he requested to discuss the issue with Warden Hanson and others at DOC. **See Plaintiff's Exhibit B.**

33. On September 4, 2017, Mr. Parker submitted two Inmate Request Forms to the Richwood Correctional Center where he was incarcerated. In both written requests, Mr. Parker asked to speak with Warden Hanson about the matter of his release date. Both of the request forms were marked as "handled" on 9/4/17 by Richwood Correctional Center staff. **See Plaintiff's Exhibit B.**

34. Warden Hanson and/or his officers, failed to transfer Mr. Parker's ARPs to the DOC and/or failed to properly investigate and handle Mr. Parker's complaints in violation of the Administrative Remedy Procedures set forth by the Department of Public Safety and Corrections (DOC) and the law. (See Department Regulation No. B-05-005; A-01-013, "Forms Managements Program"; C-05-004, "Basic Jail Guidelines" (Vl-B-002 Grievance Process); LA.ADMIN.CODE tit.22§325 (2017); LA.STAT.ANN.§§15:1171–15:1179 (2017); and LA.R.S.§15:1172(D)).

35. On October 9, 2017, Mr. Parker was *not* released as legally required, but instead was held an additional 337 days until his eventual release on September 10, 2018.

36. Instead of releasing Mr. Parker, the DPS&C Corrections Services Master Record was amended on 10/9/17 to include "Adjusted.: UNSORP" with additional comments that read "INITIAL TIME COMP DOES NOT HAVE AN APPROVED SEX OFFENDER RESIDENCE PLAN." **See Plaintiff's Exhibit C.**

37. Although Mr. Parker has at all times disputed the allegation that he was a sex offender, he simultaneously attempted to provide DOC with the two addresses they requested so that he could somehow be released from his imprisonment.

38. On November 6, 2017, then 29 days of over-detention, Mr. Parker again attempted to contact DOC staff regarding his release date. He submitted another Inmate Request Form stating that "the reason why I didn't went home just because they say I need a new address[.] I sent Classification an address 2 times and she said she never had recive [sic] it, will you please check to this matter for me[.] Thank you! [M]y time Overdue my,[sic] out date was 10-9-17." The request was marked as "handled" by DOC staff on 11/9/17. **See Plaintiff's Exhibit D.**

39. On November 26, 2017, while still imprisoned 49 days beyond his correct release date, Mr. Parker again attempted to address the issue of his over-detention, submitting yet another Inmate Request Form asking DOC staff to fax the addresses for his friends and family in the community to be included in his record. At this point in time, Mr. Parker believed that providing addresses

for friends and family where he could live after release was essential to his being released. The request was marked as "handled" by DOC staff on 11/30/17. **See Plaintiff's Exhibit E.**

40. On August 24, 2018, at 320 days beyond his release date, Mr. Parker's former Public Defender, Attorney Aaron Zagory, contacted DOC to inquire about the over-detention. Mr. Zagory emailed Rebecca Ikner of the Probation and Parole New Orleans District and explained that he did not believe Mr. Parker "has a conviction that requires him to register as a sex offender." Mr. Zagory went on to explain that "I do believe Mr. Parker should be released without any additional requirements. Please advise if I am mistaken." **See Plaintiff's Exhibit F.**

41. Ms. Ikner replied that she is not the appropriate contact for Mr. Zagory's inquiry, and cc'd her District Administrator, Steven Lassalle, for additional information. Subsequently, Mr. Lassalle forward the email to Charles Romero, Supervisor of New Orleans Probation and Parole and Sex Offender Unit Coordinator, for further guidance. Mr. Romero then replied to Mr. Zagory's initial inquiry as follows:

> "Mr. Zagory, You are not mistaken. I double checked the records, and confirmed
> what you said [in your email]. There was an honest mistake in the investigation,
> but I have corrected it. I have just notified DOC of the mistake, and that Mr.
> Parker can be released immediately (assuming there is nothing else holding him
> there). I informed DOC that Mr. Parker is NOT a sex offender. I will also notify
> NOPD, so they will not also make the same mistake." (emphasis of capitalization
> in the original). **See Plaintiff's Exhibit F.**

42. On September 7, 2018, Attorney William Most began contacting DOC on Mr. Parker's behalf in attempt to end his overincarceration as quickly as possible secure his release. On that day, Mr. Most attempted to call the DOC main phone line, left a voicemail for the DOC legal department, and spoke with a secretary in Scott Centorino's office who said they would call him back.

43. On September 10, 2018 Mr. Most had not received a reply from DOC and renewed his attempts to make contact on behalf of Mr. Parker. On that day, Mr. Most placed calls to Richwood Correctional Center and DWCC, and faxed information to Sally Gryder at DOC.

44. After 337 days of illegal imprisonment, Mr. Parker was finally released to his friends, family and community.

**B.  The DOC has a documented, admitted pattern of holding inmates past their release date.**

45.  Secretary LeBlanc had both the authority and the resources to prevent this pattern of over-detention and the resulting deprivation of rights suffered by the Plaintiff. Nevertheless, there is a significant pattern of over-detention at the DPSC, such that the pattern is tantamount to official policy.

46.  In particular, Plaintiff alleges on information and belief that Defendant LeBlanc was aware that the Legislative Auditor released a report finding that the DPSC had a serious problem of not knowing where its inmates were located, or when their proper release date was.

47.  Plaintiff further alleges on information and belief that Defendant LeBlanc was aware that counsel for the DPSC, Attorney General Jeff Landry, wrote an op-ed on March 8, 2018, during Plaintiff's over-incarceration, conceding that there "is a layer of incompetence so deep that the Corrections Department doesn't know where a prisoner is on any given day of the week or when he should actually be released from prison."

48.  Plaintiff further alleges on information and belief that Defendant LeBlanc was aware of testimony from DPSC employees in *Chowns v. LeBlanc*, La. 37th JDC 26-932 regarding the regular pattern of over-detention of inmates, specifically:

   a.  Tracy Dibenetto, a DOC employee, testified that DOC staff have discovered approximately one case of over-detention per week for the last nine years. Ms. Dibenetto also testified that inmates are sometimes incorrectly incarcerated for periods of up to a year.

   b.  Henry Goines, a DOC employee whose job was to review sentence computations for the assistant secretary, testified that he typically discovered "one or two [inmates] a week" who were eligible for immediate release.

   c.  Cheryl Schexnayder, a DOC records analyst, testified that in the course of her job, she had looked at inmates' sentences and found that they had been done wrong and the inmate was entitled to immediate release.

   d.  Sonja Riddick, a DOC employee, responded to the question: "Did you ever find a time when you looked at an inmate's records and you say, this man should be out now?" with the answer: "Oh yes."

49.  Plaintiff's allegations, which if taken as true, make it plausible that Defendant LeBlanc engaged in a policy of unconstitutionally over-detaining persons and that policy was the driving force behind the violation of Plaintiff's constitutional rights. As such, Defendant LeBlanc is subject to a *Monell* claim based on the pattern of ongoing, widespread and specifically similar incidents of over-detention.

50.  After finding no remedy elsewhere, Plaintiff has initiated this action in order to recover his damages.

**CAUSES OF ACTION**

51. Petitioners assert the following Causes of Action, plead in the alternative where appropriate, against the Defendants.

**Count 1 – False Imprisonment**

52. "The civil cause of action for false imprisonment requires proof of restraint without color of legal authority. . . There is no requirement of proving that the confinement be intentional." *Prisk v. Palazzo,* 668 So.2d 415, 417(La. App. 4 Cir. 1996) (citations omitted.). A custodian's obligation is to see that the sentence imposed is the sentence served. *State ex rel. Pierre v. Maggio,* 445 So.2d 425, 426 (La.1984); *State v. Criminal Dist. Court Parish of Orleans*, 433 So. 2d 712 (La. 1983).

53. On October 9, 2017, the legal authority to detain Mr. Parker expired.

54. Defendants had possession of Time Computation report with the release date of October 9, 2017.

55. Mr. Parker made numerous attempts at multiple levels of DOC to notify Defendants of his over-detention.

56. Although Defendants should have known of Mr. Parker's correct release date, they were certainly made aware of the over-detention in an email from counsel for Mr. Parker on August 24th, 2017. Defendants conceded the over-detention and Mr. Parker's eligibility for "immediate release" by reply email to counsel on September 5, 2018.

57. Defendants, however, imprisoned Mr. Parker until September 10, 2018.

58. Defendants thus falsely imprisoned Mr. Parker when they unlawfully held him past his release date.

**Count 2 - Negligence**

59. Due to their professional roles as jailors, Defendants owed duties to avoid over-detention to the persons in their custody, including Mr. Parker. *Chowns v. LeBlanc*, La. 37th JDC 26-932 ("The defendants represent the State of Louisiana. It was their job and responsibility to accurately determine this defendant's, or any person's, correct release date. They have a duty to timely release the defendant."); *Porter v. Epps,* 659 F. 3d 440, 445 (5th Cir. 2011) (a jailor has "not only the duty to protect a prisoner, but also the duty to effect his timely release.")

60. These duties were breached by Defendants' acts and omissions, including the failure to accurately review his record, failure to investigate his complaints of over-detention and classification as a sex offender, and that he already provided the requested addresses, and failure to timely release Mr. Parker even after repeated inquiries by Mr. Parker, his public defender, Aaron Zagory, and Attorney William Most. *See Chowns v. LeBlanc*, La. 37th JDC 26-932 ("DOC does have a duty to Mr. Chowns, and they have breached that duty".)

61. Warden Hanson and/or his officers also failed to investigate Mr. Parker's complaints and/or failed to transfer his ARPs to the DOC and/or failed to ensure that Mr. Parker's ARPs are being processed appropriately and/or failed to follow up on the ARPs they transferred and/or failed to forward the two addresses Mr. Parker provided them with and/or failed to alert the DOC to urgency and the seriousness of the allegation of hundreds of days of over detention and/or failed to perform their duties under the law and/or were negligent in performing their duties.

62. Defendants' acts and omissions were the cause in fact of Mr. Parker's harm because they resulted in his illegal incarceration for 337 days.

63. As a result of Defendants' acts and omissions, Mr. Parker suffered actual, foreseeable harm.

### Count 3 - Violation of the U.S. Constitution

64. The Fourteenth Amendment Due Process Clause is violated where a prisoner remains incarcerated after the legal authority to hold him has expired. *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980). No privilege enables a jailer to detain a prisoner beyond the period of his lawful sentence. *Whirl v. Kern*, 407 F.2d 781, 791 (5th Cir. 1968); *Powell v. Barrett*, 376 F. Supp. 2d 1340, 1351 (N. D. Ga. 2005) (detainee has constitutional right to be free from continued detention after it was or should have been known that he was entitled to release).

65. Robert Parker's 14th Amendment rights were violated when he was held for 337 days after the legal authority to hold him had expired. As Defendants were acting under the color of state law, Plaintiff's claims are actionable under 42 U.S.C. § 1983.

### Count 4 - Violation of the Louisiana Constitution

66. Article One, Section Two of the Louisiana Constitution of 1974 guarantees that "[n]o person shall be deprived of life, liberty, or property, except by due process of law."

67. By reason of the same conduct that violated Mr. Parker's federal constitutional rights, Defendants violated his state constitutional rights to liberty and due process.

68. This conduct resulted in Mr. Parker's over-detention and caused the physical, emotional and pecuniary damages as described above and below.

### Count 5 - *Monell* and Failure to Train/Supervise

69. The misconduct described above was caused by the policies, practices, and customs of Defendants, in that their employees and agents regularly over-detain persons who are subject to release.

70. The above-described widespread practices—which were so well settled as to constitute the *de facto* policy of the DPSC, Secretary LeBlanc, Warden Hanson, LaSalle Corrections, and other unknown or unnamed Defendants—were allowed to exist because the aforementioned

Defendants with authority over these acts exhibited deliberate indifference to the problem, thereby effectively ratifying it.

71. The policies, practices, and customs set forth above were the driving force behind the numerous constitutional violations in this case that directly and proximately caused Plaintiff to suffer the grievous and permanent injuries and damages set forth above.

72. Furthermore, the widespread practices described in the preceding paragraphs have been allowed to flourish because aforementioned Defendants declined to implement sufficient training, sufficient policies, or any legitimate mechanism for oversight or punishment of officers and agents.

### Count 6- *Failure to Train/Supervise*

73. Additionally, both DPSC, Secretary LeBlanc, Warden Hanson, and LaSalle have failed to train and/or supervise their employees who were supposed to ensure Mr. Parker's timely release but failed to do so.

74. DPSC failed to supervise and/or to train and/or to properly train its employees whose conduct and/or inaction has led to the over-detention of Mr. Parker and/or who mistakenly changed Mr. Parker's release date and/or who mistakenly classified him as a sex offender and/or who failed to release him even after he provided the two addresses they requested.

75. LaSalle failed to supervise and/or to train and/or to properly train its employees including Warden Hanson, and/or Warden Hanson failed to train his officers, who failed to investigate Mr. Parker's complaints and/or failed to transfer his ARP to the DPSC and/or failed to ensure that Mr. Parker's ARP are being processed appropriately and/or failed to follow up on the ARP they transferred and/or failed to forward the two addresses Mr. Parker provided them with and/or failed to alert the DPSC to urgency and the seriousness of the allegation of hundreds of days of over detention and/or failed to perform their duties under the law and/or were negligent in performing their duties.

### Count 7 – *Respondeat Superior*

76. While committing the misconduct alleged in the preceding paragraphs, some Defendants and others were employees, members, and agents of Secretary LeBlanc and LaSalle within the scope of their employment.

77. Defendants Secretary LeBlanc and LaSalle are therefore liable as principals for all torts committed by their agents.

### Count 8 – Indemnification (DOC, LaSalle Corrections, LeBlanc, and Hanson)

78. Louisiana law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable for actions taken in the discharge of their duties that are within the scope of their employment activities.

79. While committing the misconduct alleged in the preceding paragraphs, some Defendants and others were employees, members, and agents of The Louisiana Department of Public Safety and Corrections, Secretary LeBlanc, LaSalle Corrections and/or Warden Hanson within the scope of their employment.

80. The Louisiana Department of Public Safety and Corrections, Secretary LeBlanc, LaSalle Corrections and/or Warden Hanson are therefore obligated by Louisiana statute to pay any judgment entered against its employees.

**Count 9 – Direct Action Against Insurance Agencies** (ABC Insurance Companies Only)

81. Petitioner re-asserts all the facts above-stated and asserts the same causes of actions against the as yet unidentified ABC Insurance Agencies. ABC Insurance Companies are liable for the acts and omissions of their insured under Louisiana's direct action statute.

**REMEDIES**

82. Petitioner requests a trial by jury.

83. Because of the above plead causes of action, Petitioner seeks the following:

    A.  Declaratory relief;

    B.  Compensatory damages;

    C.  Special/punitive damages;

    D.  Legal costs and attorneys fees;

    E.  A permanent injunction requiring Defendants to end their practice of over-detention;

    F.  Other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

84. Petitioner states any and all other causes of action may become known through a trial of this matter on its merits against any and all other parties which are herein named or which may be added later, and request any and all other damages or remedies which this court may deem equitable.

85. Petitioner reserves the right to notice of defect to this pleading and reserve the right to amend or supplement this Petition after discovery of any additional fact, law, or claim, the amendment of which to be performed by the filing of any subsequent pleading.

86. An amicable demand has been made on all Defendants.

WHEREFORE, Petitioners pray that Defendants be served with process of this Third Amended Complaint for Damages and duly cited to answer same, that after all legal delays and due proceedings are complete that there be judgment in favor of Petitioner and against Defendants, jointly and *in solido* for the full amount of Petitioner's damages, plus legal interest

together with all costs incurred in this matter, and any other general or equitable relief that the

court deems proper.

Respectfully Submitted,

/s/Jonathan M. Rhodes
Jonathan M. Rhodes – La. Bar #32649
The Rhodes Law Firm, LLC
300 Huey P. Long Suite I
Gretna, LA 70053
T: 504-475-0975 F: 504-475-1013
E: jonathan@therhodeslawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the Plaintiff's *Third Amended Complaint* was filed electronically with the Clerk of Court via the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

    */s/ Jonathan Rhodes*
      Jonathan Rhodes

AME...                TIME COMPUTATION & JAIL CREDITS       DOC NUMBER : 00390776
AJ.II OFF.#          ...ERT                004                   005
FF. DATE                                   07292016              07292016
----------------------------------------------------------------------

RRESTED                                    08162016              08162016
ONDED
RRESTED
ONDED
RRESTED
ONDED
RRESTED
ONDED
RRESTED
ONDED
RRESTED
ONDED
RRESTED
ONDED
RRESTED
ONDED
RRESTED
ONDED
EMANDED
ENT DATE                                   08162016              08162016
ENT START                                  08162016              08162016
ROB/BOND/ESC                             P 08162016            P 08162016
RRESTED
ONDED
RRESTED
ONDED
EMANDED                                    12212016              12212016
EVOKED                                     03272017              03272017
EV START                                   03272017              03272017
TATUTE                       14:62.3               14:67.B(1)
AR & DKT#              ORL   530272         ORL   530272
ENT LENGTH(YYYMMDD)                        0020000               0020000
AIL CREDIT                                  000096                000096
WARD CREDIT                                000000                000000
CT 792
AL OWED                                634 12212018          634 12212018
T ACT                                       0110                  0110
UST SERV                               196 10092017          196 10092017
FF.CLASS                                     01                    01
AROLE ELG?                                    Y                     Y
AROLE BAL.                              86 06212017           86 06212017
ONSECUTIVE FLAG
-------------------------------------------------UNSORP----------------------
                    DBDS: 00000000  RAW DS: 10092017   TOT.      RESTORATION
     FTD: 12212018  PED: 06212017  ADJ. DS: 10092017   LOSS:0000      0DAYS
ONTROLL OFF:  05              05                 05
T CONTROLLING STACK: <DTA>              GT CREDIT...: 000000
TRP Release Factor:0000                 DISASTER RELIEF: 000000
TRP GT Earned  :0000 DAYS     CUTOFF DATE..: **/**
OMMENTS........: INITIAL TIME COMP
OTE: ALL DATES (APPLICABLE) FOR ROLLOVER ARE ADJUSTED TO 00000000 TOT.ADJ.
OMPUTED BY.....: L CATO                             05/04/17      MS    196

                          BA 9/17    PC 5/4/17              9M

                                                           EXHIBIT A

21-30446.449

RICHWOOD CORRECTIONAL CENTER

## INMATE REQUEST FORM

CHECK ONE BELOW:

☐Personal Problems    ☐Visitation      ☐Maintenance    ☐to See Warden
☐Commissary          ☐Education       ☐Law Library    ☐to see Chief of Security
☐Medical             ☐Classification  ☐Chaplin        ☐to See Captain
☐Personal Property   ☐Trusty Status   ☑Other: _Dr. HANSON_

INMATE NAME: _Robert PARKER_         DOC#: _390776_

DATE: _9/4/18_

UNIT 1 2 3 ④ 5 6 7 A B C D          BED NUMBER: _41_

Nature of Request: _I Would like to come see_
_you it very important about a matter_
_of my release date_
                              _Thank you_

SIGNATURE OF INMATE _Robert PARKER_

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

## ADMINISTRATIVE RESPONSE

Request is:    ☐Approved      ☐Denied        ☒Handled

_left word for MR. Zachary to call me back. Called again at_
_2:45 PM & left another message. Waiting for phone call back._

_9/4/18_                        CAPT. _____
DATE                           SIGNATURE OF RESPONDER

**EXHIBIT B**

21-30446.450

RICHWOOD CORRECTIONAL CENTER

INMATE REQUEST FORM

CHECK ONE BELOW:

☐Personal Problems  ☐Visitation  ☐Maintenance  ☒to See Warden
☐Commissary  ☐Education  ☐Law Library  ☐to see Chief of Security
☐Medical  ☐Classification  ☐Chaplin  ☐to See Captain
☐Personal Property  ☐Trusty Status  ☐Other: _____

INMATE NAME: _Robert PARKER_  DOC#: _390776_

DATE: _9/4/18_

UNIT 1 2 3 ④ 5 6 7 A B C D  BED NUMBER: _41_

Nature of Request: _I would like to come see you about a matter concern my release date it's very impantant Thank you_

SIGNATURE OF INMATE _Robert PARKER_

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

**ADMINISTRATIVE RESPONSE**

Request is:  ☐Approved  ☐Denied  ☒Handled

_9/4/18_
DATE

_CAPT._
SIGNATURE OF RESPONDER

**EXHIBIT B**

```
DATED: 10/05/17                  DPS&C CORRECTIONS SERVICES              TIME: 12:4
AMENDED: 10/09/17                     MASTER RECORD                      PAGE 1
------------------------------- D E S C R I P T I O N -----------------------
  DOC #..: 00390776           CURRENT LOC: RICHWOOD CORRECTIONA
  NAME: PARKER, ROBERT                    B/M    DOB.......: 11/12/1969

  SID NUMBER: 001435724       FBI NUMBER: 678669KA4      SOC.SEC....: 435336637
  DRIVER LIC:                 -                          STRIKE.....: NO
  HGT.......: 6`01            WEIGHT....: 290            HAIR.......: BLACK
  EYES......: BROWN           COMPLEXION: MEDIUM         SHOE SIZE.: 115
  ********************* R E L E A S E    I N F O R M A T I O N ***************
  DN                                                     DNA: Y
  OFFENDER CLASS: 01          GT ACT.: ACT 110          TEST DATE: 05/01/2017
  WRED: 12/21/2014
  PED: 06/21/2017             DS ...: 10/09/2017              FTD: 12/21/2018
                             ADJUSTED.: UNSORP

  PB ACTION..:                                           TOTAL SENTENCE
                             MS ON TOTAL LOSS OF GT      002YRS/ 00MTH/ 00DA
  TYPE ACTION:               TO DATE:
  ACTION DATE:               RESTORED:     0
                             CTRP Release Factor: 0   DAYS
  COMMENTS: INITIAL TIME COMP
            DOES NOT HAVE AN APPROVED SEX OFFENDER RESIDENCE PLAN

  DETAINER: N    DETAINER INFO:

--------------------- O F F E N S E    I N F O R M A T I O N -----------------


  DOCKET    PAR HW SENTENCE                          TERM    HW REV GT  APP
  NUMBER    CON CR  DATE   MOD1&2      STATUTE   CNT YYYMMDD CR FLG ACT JCR
  ========= === == ======= ======= ================= === ======= == === === ===
  530272    ORL CC 03/27/17   /    UNAUTH ENTRY-INHA 001 0020000 CC  X  110 009
  530272    ORL CC 03/27/17   /    THEFT $500 OR MOR 001 0020000 CC  X  110 009
     ORIG.SENT.   08/16/16   REVOC-PROB-NEW FELONY           ON 03/27/17
```

Robert E. Parker

Mr. Charles Jones
5914 N. Rampart St.
New Orleans, L.A
                    70117
(504) 401-1308

St
6122 St. Clude Ave
New Orleans, L.A. 70117
(504) 261-7425    **EXHIBIT C**

21-30446.452

RICHWOOD CORRECTIONAL CENTER

INMATE REQUEST FORM

CHECK ONE BELOW:

☐ Personal Problems　☐ Visitation　☐ Maintenance　☐ to See Warden
☐ Commissary　☐ Education　☐ Law Library　☐ to See Chief of Security
☐ Medical　☐ Classification　☐ Chaplain　☐ to See Captain
☐ Personal Property　☐ Trusty Status　☐ Other: _____

INMATE NAME: Robert Parker*　　DOC#: ~~309~~ 390776

DATE: 11-6-17

UNIT 1 2 3 4 5 ⑥ 7 A B C D　　BED NUMBER: 39

Nature of Request: I am writing this Request For, I
did not get my credit from Blue Waters, I
Suppose to been went home, the reason why
I didn't went home, just because, they say
I need a new address, I sent Classification
an address 3 times and she said she never
had recive it, will you please check to this
matter For me

Thank you!

My time Overdue my out date was 10-9-17

~~Robert Parker~~
SIGNATURE OF INMATE

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

ADMINISTRATIVE RESPONSE

Request is:　☐ Approved　☐ Denied　☐ Handled

The last address you sent for out date & friend has
been more sent to DOC HS at their disposition when its sent
to DOC for your rovae status. You can write DOC & request your
Blue waters Credit once you did not release, but until you get an
Approved address you'll remain here until your release date

11/9/17

SIGNATURE OF RESPONDER

**EXHIBIT D**

REDWOOD CORRECTIONAL CENTER

INMATE REQUEST FORM

CHECK ONE BELOW:

☐ Personal Problems
☐ Commissary
☐ Medical
☐ Personal Property

☐ Visitation
☐ Education
☐ Classification
☐ Trusty Status

☐ Maintenance
☐ Law Library
☐ Chaplain
☐ Other: _____

☐ to See Warden
☐ to See Chief of Security
☐ to See Captain

INMATE NAME: Robert Parker ✳

DATE: 11-26-17                          DOC#: 390776

UNIT 1 2 3 4 5 6 7 A B C D

BED NUMBER: 39

Nature of Request: I Robert Parker is writing this Request
to see if you Fax these 2 Address for me to
D.O.C. 1- mr. charles Jones 5914 N. Rampart st.
New Orleans, LA. 70117 (504) 401-1308 2- 6122 st.
Cloada Ave New Orleans, LA. 70117 (504) 261-7425
Mr. Charles is my stepdad.
Mr. John is my Friend

Thank You.
Lt Warren

Robert Parker
SIGNATURE OF INMATE

. . . . . . . . . . . . . . . . . . . . . . . . . ADMINISTRATIVE RESPONSE . . . . . . . . . . . . . . . . . . . . . . .

Request is:     ☐ Approved        ☐ Denied        ☐ Handled

this information was been submitted

11/30/17
DATE

Lt Warren
SIGNATURE OF RESPONDER

**EXHIBIT E**



# ORLEANS PUBLIC DEFENDERS

2601 TULANE AVENUE – SUITE 700 • NEW ORLEANS, LA 70119
TELEPHONE: (504) 821-8101 • FAX: (504) 821-5285 • WWW.ORLEANSPUBLICDEFENDERS.ORG

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| **TO:** Captain Pittrick | **FROM:** Aaron Zagory |
| **COMPANY:** Richwood Correctional | **DATE:** 9/6/18 |
| **FAX NUMBER:** 318 - 325 - 5186 | **TOTAL NO. OF PAGES, INCLUDING COVER:** 4 |
| **RECIPIENT'S PHONE NUMBER:** | **SENDER'S PHONE NUMBER:** 504 - 827 - 8230 |

**RE:** Robert Parker

☐ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

NOTES/COMMENTS:

AN EQUAL OPPORTUNITY EMPLOYER

**EXHIBIT F**

21-30446.455

CHARLES ROMERO <CROMERO@corrections.state.la.us>

Wed 9/5/2018 2:30 PM

To:Steven Lassalle <StevenLassalle@corrections.state.la.us>;

Cc:Aaron Zagory <azagory@opdla.org>;

Importance: High

Mr. Zagory,

You are not mistaken. I double checked the records, and confirmed what you said below. There was an honest mistake in the investigation, but I have corrected it. I have just notified DOC of the mistake, and that Mr. Parker can be released immediately (assuming there is nothing else hoiding him there). I informed DOC that Mr. Parker is NOT a sex offender. I will also notify NOPD, so they will not also make the same mistake.

Please contact me if you have any further questions.

Charles "Chuck" Romero
Supervisor- New Orleans Probation & Parole Office
Sex Offender/Child Predator Unit Coordinator
P.O.S.T. Firearms Instructor
504-962-4408
985-237-4606 (cell)

Steven Lassalle/NO/PNP/CORRECTIONS

08/24/2018 05:03 PM

To CHARLES ROMERO/NO/PNP/CORRECTIONS@CORRECTIONS

cc

Subject Fw: Robert Parker 11/12/1969

Chuckie, let me know what is up with this guy so I can reply to the attorney. Thanks.

Steven Lassalle
District Administrator
New Orleans District
1641 Poland Avenue, NOLA 70117
Adult Probation and Parole
504-962-4444
504-210-5940 cell
504-388-0355 cell
Providing public safety by "Building better lives, not bigger prisons."
—— Forwarded by Steven Lassalle/NO/PNP/CORRECTIONS on 08/24/2018 05:07 PM ——

Rebecca Ikner/NO/PNP/CORRECTIONS                    To Aaron Zagory <azagory@opdla.org>

**EXHIBIT F**

Mr. Zagory,

I am not sure why I received this email, as I have no business with sex offender cases, nor DOC time computation. I suggest that you contact DOC directly in this matter. I have cc'ed my District Administrator in this matter, who will contact you after conferring with our Sex Offender coordinator.

Respectfully,

**Rebecca Ikner**
Re-Entry Program Manager
P&P New Orleans District
504-962-4424 (office)
504-812-4465 (cell)
504-943-2890 (fax)

"Every success story is a tale of constant adaptation, revision and change".
- Richard Branson

| | |
|---|---|
| From: | Aaron Zagory <azagory@opdla.org> |
| To: | "Rebeccaikner@corrections.state.la.us" <Rebeccaikner@corrections.state.la.us> |
| Date: | 08/24/2018 04:44 PM |
| Subject: | Robert Parker 11/12/1969 |

Agent Ikner,

I was Robert Parker's attorney when he self-revoked to 2 years DOC in case 530-272 B on 3/27/2017. He says he's being told that he needs to serve his full 2 years because he can't provide an address that complies with sex offender registration requirements.

If that's the case, then I don't believe Mr. Parker has a conviction that requires him to register as a sex offender. The closest I can find is a 1997 conviction for unauthorized entry into an inhabited dwelling and indecent behavior with a juvenile in 387-524 E. However, Mr. Parker was permitted to withdraw that plea and pleaded guilty to a single amended count of simple burglary. The docketmaster is linked here:
http://www.opcso.org/dcktmstr/666666.php?&docase=387524.

I do believe Mr. Parker should be released without any address requirements. Please advise if I'm mistaken.

Best,
Aaron Zagory

Aaron Zagory
Staff Attorney
Orleans Public Defenders

**EXHIBIT F**

WARNING: THE INFORMATION IN THIS ELECTRONIC MESSAGE MAY BE PRIVILEGED AND CONFIDENTIAL LEGAL MATERIAL AND IS INTENDED FOR THE USE OF THE INDIVIDUAL(S) OR ENTITY(S) NAMED ABOVE. IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE NOTIFY SENDER IMMEDIATELY AND DESTROY ANY COPY RECEIVED AND YOU ARE ON NOTICE THAT ANY UNAUTHORIZED DISCLOSURE, COPYING, DISTRIBUTION, OR TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THESE ELECTRONICALLY TRANSMITTED MATERIALS IS PROHIBITED.

**EXHIBIT F**

TAB 5

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ROBERT PARKER**

**CIVIL ACTION**

**VERSUS**

**NO. 18-1030-JWD-EWD**

**LOUISIANA DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONS, ET AL.**

## <u>RULING AND ORDER</u>

This matter is before the Court on the *Motion to Dismiss Third Amended Complaint* (<u>Doc. 67</u>) filed by Defendant James LeBlanc ("LeBlanc"). Plaintiff Robert Parker ("Plaintiff") opposes the motion. (<u>Doc. 71</u>.) LeBlanc has filed a reply. (<u>Doc. 72</u>.) Oral argument is necessary. The Court has considered the law, the facts alleged in the *Third Amended Complaint for Negligence, False Imprisonment, and Violation of Constitutional Rights* ("*Third Amended Complaint*") (<u>Doc. 66</u>), and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the motion is granted in part and denied in part.

## I.    Relevant Factual Background

This is an over-detention case. In short, Plaintiff was sentenced to two years imprisonment (with reductions for good time credit and credit for time served), but, due to an error misclassifying him as a sex offender and the alleged actions of various defendants, Parker was not released as legally required but was instead held for an additional 337 days beyond the time when he should have been released. (*Third Amend. Compl.* ¶¶ 24–27, 35, <u>Doc. 66</u>.) Relevant here, Plaintiff claims that his over-detention was caused in part by LeBlanc's implementing a policy of over-detaining individuals in the custody of the Louisiana Department of Public Safety and Corrections ("DPSC" or the "Department"), of which LeBlanc is Secretary. (*Id.* ¶¶ 45–50.)

Plaintiff asserts the following counts against all Defendants: (1) false imprisonment under Louisiana state law; (2) negligence; (3) & (4) a violation of his right to due process under the federal and state constitutions; (5) "*Monell* and Failure to Train/Supervise"; (6) failure to train and supervise; (7) *respondeat superior*; (8) indemnification; and (9) direct action against the insurance companies. (*Id.* ¶¶ 51–81.) Here, LeBlanc moves for dismissal of the following claims against him: (1) the § 1983 claim, (2) the state law claims of false imprisonment and negligence, and (3) the *respondeat superior* and indemnification claims. (Doc. 67 ¶¶ 1–4.)

## II.　　Rule 12(b)(6) Standard

"Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11, 135 S. Ct. 346, 346–47 (2014) (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial

2

experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. This standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

In deciding a Rule 12(b)(6) motion, all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).  The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted." *Id.* at 503.

### III.    Discussion

#### A.  Section 1983 Claim Against LeBlanc Individually

##### *1. The Court's Prior Ruling*

In the Court's prior ruling on LeBlanc's Rule 12(b)(6) motion, *Parker v. Louisiana Dep't of Pub. Safety & Corr.*, No. 18-1030, 2020 WL 4353564 (M.D. La. July 29, 2020),  the Court laid out in detail the standards for qualified immunity and for liability in over-detention cases, *id.* at *10–12, and for supervisors like LeBlanc, *id.* at *13–15. *See also* Doc. 65 at 17–22, 24–26. Of particular importance to this motion was the Court's discussion of how, in order to establish that

3

a supervisor was liable for implementing unconstitutional policies, a plaintiff must ordinarily prove a pattern of similar violations. *Parker*, 2020 WL 4353564 at *14; Doc. 65 at 25. This Court specifically stated:

> "It is thus clear that a plaintiff must demonstrate 'a pattern of abuses that transcends the error made in a single case.' " [*Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850–51 (5th Cir. 2009)] (quoting [*Piotrowski v. City of Hous.*, 237 F.3d 567, 582 (5th Cir. 2001)] (citations omitted)). "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.' " *Id.* at 851 (quoting *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).

*Parker*, 2020 WL 4353564 at *14; Doc. 65 at 25. This Court then applied that standard and found:

> The *Second Amended Complaint* lacks adequate detail from which the Court can plausibly conclude that the other described incidents are sufficiently similar to what befell Plaintiff or that the same or sufficiently underlying cause is to blame. Indeed, Plaintiff provides no detail about these other incidents and essentially says only that over-detention is ubiquitous. Without more, Plaintiff's claim must fail.

*Parker*, 2020 WL 4353564 at *16; Doc. 65 at 29. This Court also held that "Plaintiff has, at this point, failed to adequately allege deliberate indifference," as Plaintiff failed to allege, even on information and belief, that LeBlanc was aware of public references to the over-detention problem (including to a Legislative Auditor's report, an Attorney General op-ed, and testimony in a state court law suit, all discussed in the complaint). *Parker*, 2020 WL 4353564 at *16; Doc. 65 at 29.

### 2. Parties' Arguments

Here, LeBlanc asserts that "Plaintiff does not lodge any factual allegations regarding *similar* incidents beyond what was deficiently alleged in the Second Amended Complaint." (Doc. 67-1 at 7.) While Plaintiff alleges on information and belief that LeBlanc was aware of the Auditor's report, op-ed, and state court case, he fails to show that "those prior instances were

4

sufficiently similar to the incident in question such that it put the Secretary on notice that a *particular* defect in his policies would lead to the constitutional violation at issue in this case." (*Id.*)

Plaintiff disagrees and argues that he has pled facts to "allow this Court to plausibly conclude that the other described incidents are sufficiently similar to the Plaintiff's case, and to establish Defendant LeBlanc's knowledge and the basis thereof." (Doc. 71 at 4.)  Plaintiff asserts:

> Specifically, the Plaintiff pled facts that explain (1) the similar year-long duration of numerous other incidents of over-detention, (2) the similar cause of numerous other instances of over-detention related to incorrect inmate records, and (3) the similar recognition upon review of records in other instances of over-detention that an inmate being held was entitled to immediate release. Rec. Doc. 66, p. 8 §(B)(48).

(*Id.*)   Plaintiff then details various allegations of the *Third Amended Complaint*. (*Id.* at 5–7.) Plaintiff further argues:

> Overall, the facts pleaded by the Plaintiff explain that there is a widespread practice of over-detention at the DOC, which has been recognized by employees, counsel, and independent auditors alike. Specifically, the frequency of year-long over-detentions, of inmate release records being done wrong, and the belated recognition that inmates are entitled to immediate release in other cases was the *exact* experience of our Plaintiff as described in his Third Amended Complaint.

(*Id.* at 6.)  Plaintiff closes by arguing that he has adequately pled LeBlanc's knowledge of these problems.

LeBlanc replies by reiterating that Plaintiff has failed to establish the similarity of the prior incidents:

> The Plaintiff fails to plead facts identifying prior violations which, because of the similarities to this case, should have put the Secretary on notice that specific training, specific supervision, or a specific policy was needed to prevent the Plaintiff's constitutional rights

21-30446.523

> from being violated <u>in the way the Plaintiff's rights were allegedly</u>
> <u>violated</u>.

(<u>Doc. 72 at 1</u>–2.) LeBlanc then goes through each of the alleged categories of prior incidents to

rebut Plaintiff's arguments.  LeBlanc concludes:

> None of the alleged other incidents referenced by the Plaintiff in his
> Complaint pertain to an alleged pattern of offenders erroneously
> labeled as sex offenders which led to delayed release from custody
> to get compliance with the sex offender registration requirements.
> Therefore, the Plaintiff has failed to meet his burden of pleading that
> Secretary LeBlanc had notice of <u>the particular problem</u> that
> supposedly caused Plaintiff's alleged over-detention.

(*Id.* at 3.)

### 3. Analysis

Having carefully considered the matter, and upon further consideration of the Court's prior

ruling, the Court finds that Plaintiff has adequately pled that there were sufficiently similar prior

incidents in sufficient number and of which LeBlanc was aware to overcome qualified immunity

at this stage.  As a result, LeBlanc's motion will be denied.

A brief review of Plaintiff's allegations is warranted.  In the *Third Amended Complaint*,

Plaintiff claims on information and belief that "there is a significant pattern of over-detention at

the DPSC, such that the pattern is tantamount to official policy." (*Third Amend. Compl.* ¶ 45, <u>Doc.</u>

<u>66</u>.)  Plaintiff further alleges that LeBlanc "was aware that the Legislative Auditor released a report

finding that the DPSC had a serious problem of not knowing where its inmates were located, or

when their proper release date was." (*Id.* ¶ 46.)  Moreover, Plaintiff avers on information and

belief, that:

> LeBlanc was aware that counsel for the DPSC, Attorney General
> Jeff Landry, wrote an op-ed on March 8, 2018, during Plaintiff's
> over-incarceration, conceding that there "is a layer of incompetence
> so deep that the Corrections Department doesn't know where a

6

> prisoner is on any given day of the week or when he should actually
> be released from prison."

(*Id.* ¶ 47.) Lastly, Plaintiff alleges on information and belief that:

> LeBlanc was aware of testimony from DPSC employees in *Chowns v.
> LeBlanc*, La. 37th JDC 26-932 regarding the regular pattern of over-
> detention of inmates, specifically:
>
> a. Tracy Dibenetto, a DOC employee, testified that DOC staff have
> discovered approximately one case of over-detention per week for the last
> nine years. Ms. Dibenetto also testified that inmates are sometimes
> incorrectly incarcerated for periods of up to a year.
>
> b. Henry Goines, a DOC employee whose job was to review sentence
> computations for the assistant secretary, testified that he typically
> discovered "one or two [inmates] a week" who were eligible for immediate
> release.
>
> c. Cheryl Schexnayder, a DOC records analyst, testified that in the course
> of her job, she had looked at inmates' sentences and found that they had
> been done wrong and the inmate was entitled to immediate release.
>
> d. Sonja Riddick, a DOC employee, responded to the question: "Did you
> ever find a time when you looked at an inmate's records and you say, this
> man should be out now?" with the answer: "Oh yes."

(*Id.* ¶ 48.) Plaintiff concludes:

> Plaintiff's allegations, which if taken as true, make it plausible that
> Defendant LeBlanc engaged in a policy of unconstitutionally over-detaining
> persons and that policy was the driving force behind the violation of
> Plaintiff's constitutional rights. As such, Defendant LeBlanc is subject to a
> *Monell* claim based on the pattern of ongoing, widespread and specifically
> similar incidents of over-detention

(*Id.* ¶ 49.)

Considering these allegations, the Court finds that Plaintiff has adequately alleged

sufficiently similar incidents based on (1) the Legislative Auditor's finding that "DPSC had a

serious problem of not knowing . . . when [inmates'] proper release date was," (*id.* ¶ 46); (2) the

7

Case: 21-30446   Document: 32-1   Page: 83   Date Filed: 09/30/2021

op-ed from LeBlanc's lawyer, the Attorney General, that LeBlanc does not know, because of a "layer of incompetence," "when [inmates] should actually be released from prison," (*id.* ¶ 47); (3) Dibenetto's testimony that inmates are "incorrectly incarcerated for periods of up to a year," (*id.* ¶ 48(a)); and (4) Schexnayder's testimony that inmate sentences have been "done wrong" and that inmates are entitled to immediate release," (*id*. ¶ 48(b)).  That is, construing these allegations in a light most favorable to Plaintiff and drawing reasonable inferences in Plaintiff's favor, the Court finds that a reasonable juror could conclude that LeBlanc implemented defective policies that lead to Plaintiffs' (and others') over-detention.

While the Fifth Circuit requires specificity and similarity, the Court declines to draw the line as finely as LeBlanc advances and limit the types of problems involved solely to those instances where individuals have been misclassified as sexual offenders. Rather, the problem alleged is, as the op-ed and Legislative Auditor's report said, the Department "not knowing when [inmates'] proper release date was," (*id.* ¶¶ 46–47), and, as Schexnayder said, the fact that "inmate sentences have been 'done wrong' and that inmates are entitled to immediate release," (*id.* ¶ 48(c)).

As to the other requirements, the Court finds that LeBlanc cannot seriously dispute (1) that the prior incidents were sufficient in number and (2) that LeBlanc did not have actual knowledge of them, particularly considering the allegations on information and belief that he knew about the Legislative Auditor's report, Attorney General op-ed, and state court testimony. (*Id.* ¶¶ 46–48.)

For all these reasons, LeBlanc's motion to dismiss Plaintiff's qualified immunity claim will be denied.

### B.  False Imprisonment

LeBlanc next moves to dismiss the false imprisonment claim against the "Defendants." LeBlanc argues that this state law claim requires that each Defendant either actually or

8

constructively detain Plaintiff.  According to LeBlanc, here, Plaintiff alleges only that he was in "state law custody."

Plaintiff responds:

> Whether or not Secretary was the person who physically locked the Plaintiff in a prison cell for 337 days past his release date, the Plaintiff's allegations, when taken as true, make it plausible that LeBlanc engaged in a policy of unconstitutionally over-detaining persons and that policy was the driving force behind the violation of Plaintiff's constitutional rights. As such, Defendant LeBlanc is subject to a claim of false imprisonment and thus personally liable for the Plaintiff's injuries.

(Doc. 71 at 10.)

LeBlanc responds first by arguing that Plaintiff engaged in "shotgun pleading." (Doc. 72 at 4.) LeBlanc then contends, "Plaintiff's repeated argument that he states a '*Monell*' claim against Secretary LeBlanc under §1983 does not respond to the argument that Secretary LeBlanc, personally, cannot be held liable for Plaintiff's alleged false imprisonment under Louisiana law." (*Id.*)  Further, LeBlanc "note[s], again, the DPSC is still a Defendant in this lawsuit and was unquestionably a 'jailer' of the Plaintiff under Louisiana law even though the Plaintiff was in parish jails for the duration of his confinement." (*Id.* at 5.)  LeBlanc then closes by again hammering the "shotgun pleading" argument. (*Id.* at 5–6.)

"Under Louisiana law, '[f]alse imprisonment is the unlawful and total restraint of the liberty of the person.' " *Hernandez v. Theriot*, 709 F. App'x 755, 757–58 (5th Cir. 2017) (quoting *Kelly v. W. Cash & Carry Bldg. Materials Store*, 745 So. 2d 743, 750 (La.  Ct. App. 1999) (emphasis omitted) (quoting *Crossett v. Campbell*, 122 La. 659, 48 So. 141, 143 (1908))). "It consists of the following two essential elements: (1) detention of the person; and (2) the unlawfulness of the detention." *Id.* (quoting *Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 690 (La. 2006)).

Having considered the matter, while the Court laments Plaintiff's lumping together of all Defendants together in his counts, the Court finds that, at this stage of the proceeding, Plaintiff has adequately put LeBlanc on notice of the allegations against him and has sufficiently described the basis for imposing liability for this claim. Specifically, Plaintiff alleged that LeBlanc implemented policies with deliberate indifference that directly led to his over-detention. Under the circumstances, the Court finds Plaintiff has adequately pled a false imprisonment claim. *Cf. Poche v. Gautreaux*, 973 F. Supp. 2d 658, 666, 674–75 (M.D. La. 2013) (finding plaintiff stated a viable state law false imprisonment claim when plaintiff alleged that "the District Attorney and the Prison Officials were personally liable under Louisiana law for 'acts and omissions in the implementation and non-implementation of policies and customs' that resulted in her illegal detention."). At the very least, the complaint, on its face, contains enough factual matter, when taken as true, to raise a reasonable expectation that discovery will reveal relevant evidence of each element of the claim. *See Lormand*, 565 F.3d at 257. As a result, LeBlanc's motion on this issue is denied.

### C. Negligence

LeBlanc's negligence argument echoes his false imprisonment one; Plaintiff lumped all "Defendants" together and fails to "plead facts showing how Secretary LeBlanc, personally, breached a duty of care he owed to the Plaintiff or how any negligent conduct of Secretary LeBlanc was the cause-in-fact of Plaintiff's harm." (Doc. 67-1 at 9 (citing *Roberts v. Benoit*, 605 So. 2d 1032 (La. 1991)).) According to LeBlanc, "[t]he few facts pleaded show the negligence claim is directed to the Department, rather than to the Secretary." (*Id.* (citing *Third Amend. Compl.* ¶¶ 59–65, Doc. 66.)

In response, Plaintiff asserts that he defined "Defendants" to include each one individually and collectively. (Doc. 71 at 10 (citing Doc. 67 at 9).) Plaintiff then argues:

10

> As the case proceeds, discovery and testimony may further illuminate the Defendants' relative fault. Nevertheless, the Plaintiff clearly plead that Secretary LeBlanc was one of the numerous "Defendants," that he was being sued in his personal capacity, and that he was responsible, at the very least, for perpetuating a policy of over-detention that caused harm to the Plaintiff. Thus, a claim of the "Defendants" negligence was a claim against Secretary LeBlanc individually and personally.  Again, the Plaintiff's allegations against Secretary LeBlanc when taken as true make it plausible that Secretary LeBlanc engaged in a policy of unconstitutionally over-detaining persons and that the policy was the driving force behind the violation of the Plaintiff's constitutional rights.

(Doc. 71 at 10–11.)

In reply, LeBlanc addresses both false imprisonment and negligence claims together. These arguments were summarized above.

For the same reasons given in the false arrest section, the Court will deny LeBlanc's motion to dismiss the negligence claim.  Construing the allegations of the *Third Amended Complaint* in a light most favorable to Plaintiff and drawing reasonable inferences in his favor, the Court finds that the complaint, on its face, contains enough factual matter, when accepted as true, to raise a reasonable expectation that discovery will reveal relevant evidence that LeBlanc breached the duties he owed as Secretary to Plaintiff and other inmates by implementing policies that were a legal cause of Plaintiff's over-detention . *See Lormand*, 565 F.3d at 257; *Tredick v. Ekugbere*, No. 17-103, 2018 WL 5504157, at *3–4 (M.D. La. Oct. 29, 2018) (deGravelles, J.) (describing elements of negligence claim).  Consequently, LeBlanc's motion on this issue will be denied.

### D. *Respondeat Superior* and Indemnification

LeBlanc next attacks Plaintiff's allegation that LeBlanc is the "employer" who is vicariously liable for torts of the DPSC and that LeBlanc is a "public entity" who is obligated to pay any judgment against Department employees. (Doc. 67-1 at 9 (citing *Third Amended*

11

*Complaint* ¶¶ 76, 79, Doc. 66).)  LeBlanc argues that he is neither an "employer" nor a "public entity."  Rather, DPSC is. (*Id.*) LeBlanc then relies on precedent from this Court and the Fifth Circuit to argue that he is not vicariously liable for and need not indemnify torts committed by employees of the Department. (*Id.* (citing *Deal v. Dep't of Corr.*, No. 16-61, 2018 WL 4935454, at *3 (M.D. La. Oct. 11, 2018)).)

Plaintiff does not oppose LeBlanc on this issue. (*See* Doc. 71.)  Plaintiff concedes that there is no *respondeat superior* liability under Section 1983 but argues that "he has sufficiently pled a pattern or practice to hold Secretary LeBlanc liable under a theory of *Monell* liability and therefore the federal and state claims against him should not be dismissed." (*Id.* at 11.)

The Court finds that Plaintiff has waived any opposition to dismissal of these claims by failing to substantively oppose LeBlanc's motion. *See United States ex rel. Byrd v. Acadia Healthcare Co., Inc.*, No. CV 18-312, 2021 WL 1081121, at *29 (M.D. La. Mar. 18, 2021) (deGraveles, J.) (citing numerous authorities on this issue).  Accordingly, Plaintiff's claim against LeBlanc for *respondeat superior* and indemnification will be dismissed with prejudice.

### IV.    Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss Third Amended Complaint* (Doc. 67) filed by Defendant James LeBlanc is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** in that Plaintiff's claims for *respondeat superior* and indemnification against LeBlanc are **DISMISSED WITH PREJUDICE**.  In all other respects, the motion is **DENIED**.

Signed in Baton Rouge, Louisiana, on June 30, 2021.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

12

## CERTIFICATE OF SERVICE

I certify that on September 30, 2021, I filed the foregoing record excerpts with the Court's CM/ECF system, which will automatically send an electronic notice of filing to Appellant's counsel of record.

*/s/ Elizabeth B. Murrill*
Elizabeth B. Murrill
*Attorney for Defendant-Appellant*