No. 21-30446

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

————————————

**Robert Parker**
*Plaintiff-Appellee*

v.

**James M. Leblanc, Secretary of Department of Public Safety and Corrections,**
*Defendant-Appellant.*

————————————

On Appeal from the United States District Court
For the Middle District of Louisiana, No. 18-1030-JWD-EWD
Hon. Judge  John W. deGravelles

————————————

## OPPOSITION BRIEF BY PLAINTIFF-APPELLEE
Robert Parker

————————————

JONATHAN RHODES                    STEPHEN HAEDICKE
The Rhodes Law Firm, LLC           The Law Office of Stephen J. Haedicke, LLC
4842 Tchoupitoulas Street          1040 Saint Ferdinand St.
New Orleans, LA 70115              New Orleans, LA 70117


*Counsel for Plaintiff-Appellee*


October 29, 2021

**No. 21-30446**

**In The United States Court of Appeals For the Fifth Circuit**

———————————

**Robert Parker**
*Plaintiff-Appellee*
v.
**James M. Leblanc, Secretary of Department of Public Safety and Corrections**,
*Defendant-Appellant.*

———————————

On Appeal from the United States District Court
For the Middle District of Louisiana, No. 18-1030-JWD-EWD
Hon. Judge  John W. deGravelles

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Honorable Court may evaluate possible disqualification or recusal.

<u>Plaintiff - Appellee:</u>

1. Robert Parker, Plaintiff- Appellee

<u>Counsel for Plaintiff-Appellee:</u>

2. Jonathan Rhodes, Attorney for Plaintiff-Appellee

3. Stephen Haedicke, Attorney for Plaintiff-Appellee

<u>Defendants-Appellants:</u>

4. Louisiana Department of Public Safety & Corrections ("DPSC" or "DOC")

5. Secretary James LeBlanc

6. Warden Ray Hanson

7. Lasalle Corrections, LLC

8. Brenda Acklin

9. Does 1-10

10. ABC Insurance Agencies

Counsel for Defendants-Appellants:

11. Jeff Landry, Attorney General

12. Elizabeth B. Murril, Solicitor General

13. Ben Wallace, Asst. Solicitor General

14. Josiah Kollmeyer, Asst. Solicitor General

15. Andre Charles Castaing, Asst. Attorney General

16. Phyllis E. Glazer, Asst. Attorney General

Respectfully submitted,

/s/ Stephen J. Haedicke
STEPHEN HAEDICKE
1040 Saint Ferdinand St.
New Orleans, LA 70117
T: 504-291-6990
E: stephen@haedickelaw.com

*Attorney for Plaintiff – Appellee*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Pursuant to 5th Cir. R. 28.2.4, the Plaintiff-Appellee, Robert Parker, respectfully suggests that oral argument is not necessary in this case because this case does not present any novel or complex issues of law.  If the Court determines that oral argument is necessary, Plaintiff-Appellee will participate to aid in the Court's adjudication of the matter.

## **Table of Contents**

CERTIFICATE OF INTERESTED PERSONS.....................................................ii

STATEMENT REGARDING ORAL ARGUMENT..........................................iv

PRELIMINARY STATEMENT............................................................................1

STATEMENT OF THE CASE.............................................................................2

SUMMARY OF THE ARGUMENT....................................................................6

STANDARD OF REVIEW..................................................................................7

LAW OF ARGUMENT.......................................................................................7

    **1.  The Plaintiff has alleged that Leblanc was aware of a pattern of sufficiently similar problems with over-detention at DPSC such that his inaction in the face of these problems was objectively unreasonable** ………………………………………………………….8

    **2.  Leblanc waived the argument that his conduct did not violate clearly established law, and in any event the law was clearly established**….17

CONCLUSION..................................................................................................18

# **Table of Authorities**

## **CASES**

*Barnes v. District of Columbia*, 793 F.Supp. 2d 260 (D.D.C. 2011)...................16

*Connick v. Thompson*, 563 U.S. 51 (2011)..............................................8, 10, 11, 12

*Douthit v. Jones*, 619 F.2d 527 (5th Cir. 1980)....................................................17

*Hicks v. Leblanc*, 832 Fed. Appx. 836 (5th Cir. 2020).................1, 9, 11, 12, 14, 18

*Jason v. Tanner*, 938 F.3d 191 (5th Cir. 2019)....................................12, 13, 14, 15

*Keelan v. Majesco Software, Inc.*, 407 F.3d 332 (5th Cir. 2005)......................17

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009).........................7, 17

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009)................................................8

*Porter v. Epps*, 659 F.3d 440 (5th Cir. 2011)........................................8, 10, 17, 18

*Thompson v. City of Waco, Tex.*, 764 F.3d 500 (5th Cir. 2014).......................7

*Whirl v. Kern,* 407 F.2d 781 (5th Cir. 1968)......................................................18

## **RULES AND STATUTES**

Fourteenth Amendment to the U.S. Constitution.............................................5

Federal Rule of Civil Procedure 12..................................................................7

## PRELIMINARY STATEMENT

This is a case about the denial of a fundamental American right— the right to liberty.  As alleged in the Plaintiff's Third Amended Complaint, the Defendants deprived the Plaintiff of his liberty for 337 days by keeping him locked up in a State prison for almost a year after he should have been released.  Disturbingly, the Plaintiff's experience was not an isolated event.  The Plaintiff's Complaint alleges facts showing that numerous other Louisiana prisoners have been and continue to be held past their release dates because employees of the State Department of Public Safety and Corrections ("DPSC") fail to do their jobs correctly, either because of deliberate indifference or negligence, or both.  This Court is familiar with the extensive problems with over-detention of Louisiana prisoners based on briefing in at least two other cases before this Court involving similar allegations. *See Hicks v. Leblanc*, 832 Fed. Appx. 836 (5th Cir. 2020) and *Grant v. Gusman*, U.S. Fifth Circuit case No. 2021-30230.  In this case, the Plaintiff alleges that Defendant Leblanc knew about these problems but failed to do anything about them, thereby exhibiting his deliberate indifference to constitutional rights.  The District Court was correct that these factual allegations are sufficient to overcome Leblanc's assertion of qualified immunity, and Leblanc's appeal should be denied.

## STATEMENT OF THE CASE

Contrary to Defendant Leblanc's assertion, the Plaintiff does not allege that an "honest mistake" led to his over-detention for almost a year. Instead, the "honest mistake" language is the gloss a State of Louisiana employee tried to put on the situation while admitting that the State had, in fact, kept the Plaintiff imprisoned for almost a year without cause. *See ROA at 456 (email from State Probation and Parole Employee).*

What the Plaintiff actually alleges is that he was wrongfully imprisoned because the Defendants, including Defendant Leblanc, acted with deliberate indifference toward his constitutional right to freedom, and that there was a well-known pattern of other Louisiana prisoners being over-detained because of administrative errors. More specifically, the Plaintiff alleges that when he was first taken into DPSC custody on a two-year sentence for a probation violation, a DPSC employee correctly calculated his release date as October 9, 2017. *ROA at 440.* However, just before that release date arrived, another DPSC employee, defendant Brenda Acklin, overrode the prior employee's calculation and labeled the Plaintiff as a sex offender who needed to have an approved residency plan on file with DPSC before he could be released. *Id.* The Plaintiff is not in fact a sex offender, as could have been discovered through a simple check of the Louisiana State

2

Police Sex Offender Registry. *Id*. However, based on Acklin's error, the Plaintiff was told that he could not be released until a residency plan was approved. *Id*.

Although the Plaintiff disputed that he was a sex offender, and requested to speak with the Warden about the situation, no one would believe his protestations. *ROA at 441*. The Plaintiff also tried to comply with the DPSC's erroneously imposed requirements by submitting information about addresses where he might live after his release. Although these submissions were marked "handled" by someone at DPSC, the Plaintiff was not released and he was not told why the addresses he had submitted were not approved. *Id*.

Finally, after more than 300 days of wrongful incarceration, the Plaintiff's former public defender sent an email to the State Probation and Parole office, asserting that DPSC was wrong to have labeled the Plaintiff as a sex offender and that he should be released. This email was sent on August 24, 2018. *ROA at 457*. The recipient of the email responded that same day, advising that she was not the one who handled such inquiries. *ROA at 456*. But she copied her supervisor on the reply, who forwarded it on to the sex offender coordinator for the New Orleans probation and parole office. *Id*. The coordinator did not respond until twelve days later, on September 5, 2018.[1] The coordinator's email stated that there had been an

---

[1] The Appellant's brief suggests that this twelve-day delay in responding resulted from what was apparently a very long Labor Day holiday. *See Appellant's Brief at p. 6.*

"honest mistake" that caused the Plaintiff to have been labeled a sex offender. *ROA at 442*. The email advised that the coordinator had informed DPSC that the Plaintiff was not a sex offender, and that he could be released immediately. *Id*.

However, despite this September 5th email, the Plaintiff was not released immediately. Instead, he remained incarcerated for an additional five days, until September 10, 2018. *Id*. By the time he was finally released, he had been held a total of 337 days in excess of his lawful sentence. *Id.*

Sadly, the Plaintiff's experience is not an isolated event. As has now been well-documented in the records of other cases before this court, particularly *Grant v. Gusman, et al*., Fifth Circuit Case #2021-30230, there is voluminous evidence showing both that Louisiana routinely over-detains inmates because of administrative errors like the one in this case, **and** that Defendant Leblanc was well-aware of this long-standing, pervasive problem. Although the detailed factual record developed in *Grant* was not available to the Plaintiff in this case at the time he filed his Third Amended Complaint, the Plaintiff did allege the following:

> 46. In particular, Plaintiff alleges on information and belief that Defendant LeBlanc was aware that the Legislative Auditor released a report finding that the DPSC had a serious problem of not knowing where its inmates were located, or when their proper release date was. 47. Plaintiff further alleges on information and belief that Defendant LeBlanc was aware that counsel for the DPSC, Attorney General Jeff Landry, wrote an op-ed on March 8, 2018, during Plaintiff's over-incarceration, conceding that there "is a layer of incompetence so deep that the Corrections Department doesn't know where a prisoner

4

is on any given day of the week or when he should actually be released from prison."

48. Plaintiff further alleges on information and belief that Defendant LeBlanc was aware of testimony from DPSC employees in *Chowns v. LeBlanc*, La. 37th JDC 26-932 regarding the regular pattern of over-detention of inmates, specifically:

a. Tracy Dibenetto, a DOC employee, testified that DOC staff have discovered approximately one case of over-detention per week for the last nine years. Ms. Dibenetto also testified that inmates are sometimes incorrectly incarcerated for periods of up to a year.

b. Henry Goines, a DOC employee whose job was to review sentence computations for the assistant secretary, testified that he typically discovered "one or two [inmates] a week" who were eligible for immediate release.

c. Cheryl Schexnayder, a DOC records analyst, testified that in the course of her job, she had looked at inmates' sentences and found that they had been done wrong and the inmate was entitled to immediate release.

d. Sonja Riddick, a DOC employee, responded to the question: "Did you ever find a time when you looked at an inmate's records and you say, this man should be out now?" with the answer: "Oh yes."

*ROA at 443.*

Based on these allegations, the Plaintiff's Third Amended Complaint alleged

that he had been unlawfully imprisoned in violation of his Fourteenth Amendment

right to due process. He asserted a failure to train/supervise claim against

Defendant Leblanc in his individual capacity. *ROA at 445-46.* The District Court

denied Leblanc's Rule 12(b)(6) Motion to Dismiss based on qualified immunity. *ROA at 519-530*. This appeal follows.

## SUMMARY OF THE ARGUMENT

Defendant Leblanc's primary argument is that he is entitled to qualified immunity because the Plaintiff has not identified other cases where Louisiana inmates were over-detained based on the ***exact*** same facts as his case, that is, being mislabeled as a sex offender. But the District Court was correct to reject this argument. Exactitude is not required to show a pattern. Instead, the standard is one of ***similarity*** and ***numerosity***. Here, the facts alleged in the Third Amended Complaint establish a fair inference that there have been numerous other cases of over-detention sufficiently similar to the Plaintiff's situation to put Leblanc on notice of a problem. The Complaint alleges that despite awareness of this problem, Leblanc did nothing. Such allegations are sufficient to overcome an assertion of qualified immunity at the pleading stage.

Defendant Leblanc also castigates the District Court for failing to identify any clearly established law that his conduct violated. However, Leblanc's sole qualified immunity argument in the District Court was the claim that the Plaintiff had not pleaded facts sufficient to show a pattern of similar incidents. His clearly established law argument is therefore waived. But even if the Court considers this argument, there can be no reasonable dispute that it was clearly established law

that a corrections official like Leblanc must train and supervise his subordinates to

release people when the law requires that they be released.  Leblanc's appeal

should therefore be denied.

## STANDARD OF REVIEW

This Court reviews the denial of a Rule 12(b)(6) Motion to Dismiss based on

qualified immunity *de novo*.  The familiar Rule 12(b)(6) standards apply.  As this

Court has stated:

> The complaint (1) on its face (2) must contain enough factual matter
> (taken as true) (3) to raise a reasonable hope or expectation (4) that
> discovery will reveal relevant evidence of each element of a claim.
> "Asking for [such] plausible grounds to infer [the element of a claim]
> does not impose a probability requirement at the pleading stage; it
> simply calls for enough fact to raise a reasonable expectation that
> discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).  All

well-pleaded facts are taken as true and viewed in the light most favorable to the

plaintiff.  *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).

The task of the Court is not to decide if the plaintiff will eventually be successful,

but to determine if a "legally cognizable claim" has been asserted.  *Id*. at 503.

## LAW AND ARGUMENT

To overcome an assertion of qualified immunity, a Plaintiff must allege facts

showing (1) a violation of a constitutional right; and (2) that an official's actions

were objectively unreasonable in light of clearly established law at the time of the

alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 231, 244 (2009). "The

relevant, dispositive inquiry in determining whether a right is clearly established is

whether it would be clear to a reasonable [official] that his conduct was unlawful

in the situation he confronted." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011).

The Plaintiff's allegations in this case satisfy this test.

**1. The Plaintiff has alleged that Leblanc was aware of a pattern of sufficiently similar problems with over-detention at DPSC such that his inaction in the face of these problems was objectively unreasonable.**

Defendant Leblanc's primary argument is that the Plaintiff has failed to

allege a sufficiently similar pattern of over-detention cases because his case

involved being mislabeled as a sex offender, rather than some other kind of

administrative error that resulted in the State wrongfully incarcerating an

individual. As the District Court observed, however, a pattern requires similarity,

not exact duplication. *Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of

**<u>similar</u>** constitutional violations by untrained employees is ordinarily necessary to

demonstrate deliberate indifference.") (emphasis added). The Plaintiff's

allegations plausibly show that DPSC employees routinely make administrative

errors like the one in this case that result in inmates being detained past their lawful

release dates.

Indeed, the Plaintiff's Third Amended Complaint contains quotations from DPSC employees in another over-detention case that could very well describe his situation. The Plaintiff here could have been one of the "one or two [inmates] a week" that Henry Goines, a DPSC employee whose job was to review sentence computations, discovered was entitled to immediate release. *ROA at 443*. He also certainly could have been one of the inmates who Cheryl Schexnayder, a DOC records analyst, had in mind when she testified that she had found inmates who had been "done wrong" and were entitled to immediate release. *Id.* Sonja Riddick, another DSPC employee, might have been thinking of the Plaintiff when she responded to the question: "Did you ever find a time when you looked at an inmate's records and you say, this man should be out now?" with the answer: "Oh yes." *Id.* And finally, the Plaintiff certainly could have been one of the inmates Attorney General Jeff Landry was speaking about when he opined that the DPSC was so incompetent that it didn't know when inmates "should actually be released from prison." *Id.* The Plaintiff should actually have been released from prison on October 9, 2017, but he wasn't for another 337 days. His case fits into the pattern described in these allegations.

Furthermore, this Court has already opined that Leblanc could be held liable on a failure to train/supervise theory based on a pattern of incompetent over-detention like that described above. In *Hicks v. Leblanc*, 832 Fed. Appx. 836 (5th

Cir. 2020), this Court articulated the law of failure to train/supervise claims when

analyzing Leblanc's potential liability for the over-detention claim articulated in

that case:

> A supervisory official may be held liable only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury. [*Porter v. Epps*, 639 F.3d 440, 446 (5th Cir. 2011)].  "In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." *Id.* (internal quotation marks and citation omitted, alterations and emphasis in original). "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Id.* (*quoting Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992)).  "A supervisor may also be liable for failure to supervise or train if: '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.' " *Id.* (*quoting Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009)).

> Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011) (*quoting Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).  To establish a state actor's disregard, there must be "actual or constructive notice" "that a particular omission in their training program causes ... employees to violate citizens' constitutional rights" and the actor nevertheless "choose[s] to retain that program." *Id.* (citation omitted).  "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate

10

indifference." *Id*. at 62, 131 S.Ct. 1350  (internal quotation marks and citation omitted).

*Hicks*, 832 Fed. Appx. at 841-42.

Applying this law to the failure to train/supervise claim against Leblanc in

*Hicks*, this Court opined as follows:

> Whether LeBlanc acted with deliberate indifference is a close call. Hicks alleged that LeBlanc knew of the DPSC's long history of over-detaining inmates; that DPSC employees used different methods to calculate release dates; and that the DPSC had not disciplined employees who miscalculated sentences. **However, the alleged facts—which included processing delays, data errors, inconsistent calculation methodologies, and unspecified deficiencies—speak to the incompetence of DPSC employees and the lack of adequate training and supervision. Based on these allegations, LeBlanc could be held liable for incompetent over-detention, such as the failure to process a prisoner's release or immediately compute an inmate's sentence after being sentenced to time served.**

*Id*. at 842 (emphasis added).

Notably, the *Hicks* Court grouped together a variety of different administrative errors—"processing delays, data errors, inconsistent calculation methodologies, and unspecified deficiencies"—when it described the type of incompetent over-detention for which Leblanc could be held liable.  The Court thus implicitly rejected the Defendant's argument in this case that only the exact same type of administrative errors can establish a pattern.  Furthermore, the Plaintiff's situation was certainly some sort of "data error" because for some unknown reason (which further discovery might reveal) a DPSC employee

11

mislabeled the Plaintiff as a sex offender.  Either DPSC's data was in error or the

mislabeling was a data error in itself.  In either case, the situation was a "data

error" that fits into the incompetent pattern of over-detention described in *Hicks*

Leblanc's arguments to the contrary are unpersuasive.  He would like to

require that a pattern can be established only with exact duplicates of a particular

situation, but the law demands only similarity.  *Connick*, 563 U.S. at 62.  The key

question in this regard is whether the other incidents put the defendant official on

notice of the need for additional training or supervision to prevent employees from

violating citizens' constitutional rights.  In this case, Leblanc had a clear duty, as

described more particularly below, to ensure that his employees were releasing

Louisiana prisoners when the law required that they be released.  The extensive

pattern of incompetence resulting in over-detention of Louisiana prisoners

certainly should have put him on notice that more training or supervision to ensure

that prisoners were in fact getting release was required.  Yet, he failed to address

this problem, and that failure led to the violation of the Plaintiff's rights.

Leblanc relies on this Court's decision in *Jason v. Tanner* to support his

argument.  That reliance is misplaced.  The key issue in *Jason* was not whether the

incidents were similar, but rather their numerosity.  In *Jason*, one inmate attacked

another with a yard tool.  938 F.3d 191, 192 (5th Cir. 2019).  The injured inmate

sued, alleging that the prison's warden was deliberately indifferent to the inmate's

Eighth Amendment rights based on the failure to control yard tools such as the sling blade. *Id.* at 192. At the summary judgment stage, this Court held that the warden was entitled to qualified immunity because "there was no repeated pattern of violations." *Id.* at 198. The Court noted that the Plaintiff in *Jason* alleged previous incidents of inmate-on-inmate violence in which "there had been three yard fights with brooms and one with a mop." *Id.* However, "three yard fights with brooms and one with a mop just aren't enough to constitute a pattern." *Id.* In other words, the Court held that the plaintiff did not present incidents of sufficient numerosity to establish a pattern. The *Jason* plaintiff also did not show that the brooms and mops were distributed via the same program as the sling-blade. As the Fifth Circuit stated, "[t]his was the first and only sling-blade attack in a presumably otherwise incident-free program." *Id*.

The Plaintiff in this case submits that the outcome of *Jason* would have been different if the yard-tool program had been beset with the same types of problems as are described in the Plaintiff's Complaint. For example, if the *Jason* plaintiff had proved that yard-tools were used in "one or two [assaults] per week," that obviously would have established a pattern sufficient to put the warden on notice that the program for distributing the yard-tools was not working. And it would not have mattered whether inmates were hurting each other solely with sling blades or other tools that were being distributed via the same program. In other words, if the

13

*Jason* plaintiff had been able to show that sling blades, rakes, and other yard tools were distributed via the same program, and that "one or two inmates" per week had been attacked with rakes, it would not have mattered that the *Jason* plaintiff was the first to have been attacked by a sling blade rather than a rake. It was not the identity of the tool used as a weapon that really mattered in *Jason*, but rather the program through which that tool had been distributed.

Here, the program that is at issue is the DPSC's constitutional duty to make sure that inmates who have completed their sentences are released on time. The extensive problems alleged in this case, and documented in the records of *Hicks* and *Grant*, clearly show that DPSC employees are not fulfilling this duty. There may be a variety of reasons they are not doing so—all rooted in incompetence and poor record keeping and/or bad systems—but the outcome is the same: inmates like the Plaintiff being held for months or even years past their release dates. Obviously, this situation calls out for additional training and/or supervision of DPSC employees which, the Plaintiff alleges, Leblanc failed to provide. These allegations should be sufficient to overcome the assertion of qualified immunity at this stage of the case.

Even if this Court were to accept the Defendant's argument about the need for identical prior incidents, the Plaintiff has in fact alleged very similar if not *identical* instances of over-detention at the DOC. In both his Second and Third

Amended Complaints, the Plaintiff described testimony of Cheryl Schexnayder, a DOC records analyst, that in the course of her job she had "looked at inmates' sentences and found that they had been done wrong and the inmate was entitled to immediate release." *ROA at 440*. The Plaintiff never alleged that his initial "time calculation" was done wrong. In fact, he alleged, among other errors, that his *sentence* was done wrong because he was misclassified as having been sentenced to a sex-offender registration plan.

Like the other instances of sentences being done wrong, Mr. Parker was also entitled to immediate release. The patterns alleged by the Plaintiff, where an inmates' "sentence" was "done wrong" and where he was "entitled to immediate release" is *exactly* the same as his own circumstances. Unlike in *Jason,* this was not the "first and only" instance of a sentence being done wrong. Indeed, the District Court specifically identified this as a sufficiently similar pattern of sentences being done wrong. When declining to limit the types of instances solely to those involving the misclassification of a sex-offenders, the court stated that the common problem herein is the fact that "inmate **sentences** have been 'done wrong' and that inmates are entitled to immediate release." *ROA at 526* (emphasis added).

Two final points on this argument. First, it is noteworthy that the Plaintiff's Complaint includes the allegation that DPSC failed to release him for five days even after it had been notified by its own employee that he was not a sex offender

15

and could be released immediately.  This allegation was essentially admitted by the

Defendant through his brief, stating that the DPSC acknowledged the over-

detention on September 5, 2018, and that "[f]ive days later, on Monday September

10, 2018, Parker was released from prison.  That delay in releasing him even after

its own employees recognized he was not a sex offender is in itself a constitutional

violation that also fits into the pattern of bureaucratic incompetence that has been

alleged here and thoroughly documented in *Grant.  See, e.g., Barnes v. District of

Columbia*, 793 F.Supp. 2d 260 (D.D.C. 2011) ("In recognition of these facts,

courts appear to agree that the maximum permissible administrative delay in the

over-detention context likely falls well short of the 48-hour horizon set out in

McLaughlin.").  Leblanc's brief on appeal ignores this fact.

Second, it is important to remember the proper standard that must be applied

at this stage of the case.  Because this is an interlocutory appeal from the denial of

a Rule 12(b)(6) Motion to Dismiss, the Plaintiff has not yet been provided the

opportunity to conduct discovery on the pattern element of his claim.  It may well

be that discovery reveals a substantial number of other inmates who were

mislabeled as sex offenders and therefore wrongfully held past their release dates.

The Plaintiff's task at this stage is only to plead facts establishing a "reasonable

hope or expectation that discovery will reveal relevant evidence of each element of

a claim." *Lormand,* 565 F.3d at 257.  The allegations in his Third Amended

Complaint do just that.

### 2. Leblanc waived the argument that his conduct did not violate clearly established law, and in any event the law was clearly established.

Leblanc also asserts that the District Court failed to cite cases establishing

that failing to release an inmate when their sentence is over violates clearly

established law.  However, Leblanc did not contend in the District Court that the

law was not clearly established in this area.  *See ROA at 461-70 (Leblanc's*

*Memorandum in Support of Motion to Dismiss Third Amended Complaint).*  He has

therefore waived this argument on appeal.  *Keelan v. Majesco Software, Inc.*, 407

F.3d 332, 340-41 (5th Cir. 2005) ("If a party wishes to preserve an argument for

appeal, the party must press and not merely intimate the argument during the

proceedings before the district court.  An argument must be raised to such a degree

that the district court has an opportunity to rule on it.") (citations and quotations

omitted).

Even if the Court does consider this argument, it is borderline frivolous.  The

law is clear that a jailer like Leblanc has a duty to ensure inmates are timely

released from prison.  *Porter*, 659 F.3d at 445 ("[A] jailer has a duty to ensure that

inmates are timely released from prison."), *Douthit v. Jones*, 619 F.2d 527, 532

(5th Cir. 1980) ("Detention of a prisoner thirty days beyond the expiration of his

sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process."); *Whirl v. Kern,* 407 F.2d 781, 791 (5th Cir. 1968) ("There is no privilege in a jailer to keep a prisoner in jail beyond the period of his lawful sentence" and a jailer has "the duty to effect his timely release.").  This Court reiterated this holding in *Hicks*: "A prisoner's right to timely release was clearly established well before 2017 . . .". 832 Fed. Appx. at 840.

The Plaintiff's Complaint alleges that Leblanc was aware that there was a pervasive pattern of Louisiana prisoners not being released timely from prison but failed to do anything to address the problem.  Such inaction is objectively unreasonable in light of the clearly established law that "a jailer has a duty to ensure that inmates are timely released from prison." *Porter*, 659 F.3d at 445. Leblanc's argument that the District Court's ruling should be reversed because the law was not clearly established should be rejected.

## <u>CONCLUSION</u>

The District Court correctly denied Defendant-Appellant's Motion for Summary Judgment based on qualified immunity because the Plaintiff adequately alleged a constitutional violation by Secretary LeBlanc, and that LeBlanc's actions were objectively unreasonable in light of clearly established law. Accordingly, Secretary LeBlanc is not entitled to qualified immunity and the District Court's partial denial of summary judgment should be affirmed.

Respectfully submitted,

/s/ Stephen J. Haedicke
STEPHEN HAEDICKE
1040 Saint Ferdinand St.
New Orleans, LA 70117
T: 504-291-6990
E: stephen@haedickelaw.com


 /s/ Jonathan Rhodes_____
Jonathan Rhodes La. Bar #32649
The Rhodes Law Firm, LLC
4842 Tchoupitoulas Street
New Orleans, LA 70115
T: 504-475-0975 F: 504-475-1013
E: jonathan@therhodeslawfirm.com


*Attorneys for Plaintiff – Appellee*

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2021 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all parties.


/s/ Stephen J. Haedicke