# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 17, 2023

Lyle W. Cayce
Clerk

———————

No. 21-30446

———————

Robert Parker,

*Plaintiff—Appellee*,

*versus*

James M. LeBlanc, *Secretary of Department of Public Safety and Corrections*,

*Defendant—Appellant*.

———————————————————

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:18-CV-1030

———————————————————

Before Higginbotham, Southwick, and Willett, *Circuit Judges*.
Leslie H. Southwick, *Circuit Judge*:

Robert Parker filed a Section 1983 civil rights suit in Louisiana state court against Louisiana Department of Public Safety and Corrections Secretary James LeBlanc.  Among other claims, Parker argues that LeBlanc violated his constitutional rights by misclassifying him as a sex offender and thereby illegally extending his detention in prison for 337 days past his release date.  LeBlanc sought dismissal based on qualified immunity, but the district court denied the motion.  On this interlocutory appeal, we AFFIRM.

No. 21-30446

FACTUAL AND PROCEDURAL BACKGROUND

On December 21, 2016, Parker was arrested while on probation and placed in the Orleans Parish Prison. On March 27, 2017, a Louisiana state court sentenced Parker to two years of imprisonment for violating his probation but awarded him credit for the months he served in the parish prison. Three days later, the Louisiana Department of Public Safety and Corrections ("DPSC") assumed custody of Parker.

On May 4, 2017, a DPSC employee identified as "L. Cato" determined that Parker had a "Must Serve" date of October 9, 2017. Parker alleges he should have been released on that date. Sometime in September 2017, however, DPSC employee Brenda Acklin reviewed Parker's file, crossed out the October 9, 2017, date, then wrote above it an acronym for "unapproved sex offender registry plan." Under Louisiana law, the DPSC must verify the legality of sex offenders' post-release residences before they can be released from prison. *See generally* LA. REV. STAT. ANN. § 15:543.

During the course of his imprisonment at Richwood Correctional Center, Parker submitted several inmate request forms. In his first two requests, Parker asked to meet with Warden Ray Hanson about his release date. He filed two other forms in an attempt to provide the DPSC with addresses detailing where he could reside upon his release. Parker also consistently disputed that he was a sex offender.

On August 24, 2018, a public defender, Aaron Zagory, who had previously represented Parker, emailed the reentry program manager for the DPSC probation and parole division. Zagory's email stated that he did not "believe Mr. Parker has a conviction that requires him to register as a sex offender." Zagory did note that Parker had been convicted in 1997 of indecent behavior with a juvenile and unauthorized entry into an inhabited

2

dwelling, but that Parker "was permitted to withdraw that plea and pleaded guilty to a single amended count of simple burglary."

Rebecca Ikner, the reentry program director for the DPSC probation and parole division, responded that she was not involved in sex offender cases or time computation. Ikner copied her supervisor on the reply, who forwarded it to Charles Romero, the sex offender unit coordinator of the DPSC's probation and parole office in New Orleans. Twelve days later, on September 5, 2018, Romero acknowledged the "honest mistake in the investigation" and explained that it had been corrected. Romero stated that "Mr. Parker can be released immediately (assuming there is nothing else holding him there)" and noted that Romero had informed the DPSC that Parker was not a sex offender. Parker was held an additional five days, until September 10, 2018, when he was finally released from prison.

Parker filed a civil rights suit in Louisiana state court against the DPSC, Secretary of the DPSC James LeBlanc, Ray Hanson, Brenda Acklin, "Does 1-10," and ABC Insurance Companies. Parker alleged that the defendants violated his constitutional rights by detaining him past his release date. He also claimed that the defendants committed similar violations against other state inmates. LeBlanc and the other defendants removed the case to federal court based on federal question jurisdiction, specifically the claims Parker raised under 42 U.S.C. § 1983.

Parker filed a First Amended Complaint in April 2019. Hanson moved to dismiss the claims against him based upon misjoinder. The district court denied the motion but ordered Parker "to amend the operative complaint to add specificity and cure any deficiencies therein." Parker then filed a Second Amended Complaint in November 2019.

LeBlanc, the DPSC, and Acklin filed a motion to dismiss Parker's claims against them. LeBlanc and Acklin argued that Parker failed to state a

claim upon which relief could be granted because they were entitled to qualified immunity. The district court again granted Parker leave to amend his complaint after holding that Parker's Second Amended Complaint lacked sufficient detail and that Parker had not adequately alleged deliberate indifference in "fail[ing] to allege, even on information and belief, that LeBlanc was aware" of the deficiencies in the prison systems.

Parker filed a Third Amended Complaint in August 2020. In his Third Amended Complaint, Parker cited three pieces of evidence to establish LeBlanc's knowledge of deficiencies in the way the DPSC calculated and implemented release dates: (1) testimony by DPSC employees in unrelated cases regarding problems with the over-detention and release of inmates; (2) a 2018 newspaper opinion-editorial by Louisiana Attorney General Jeff Landry regarding the same issue; and (3) a legislative audit report. These had also been cited in his Second Amended Complaint. In his Third Amended Complaint, however, Parker alleged for the first time on information and belief that Defendant LeBlanc was aware of the deficiencies in the system and the specific evidence cited in the complaint. LeBlanc again moved to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that the complaint failed to cure the main deficiency identified by the district court in its previous order — namely, the lack of a pattern of similar constitutional violations.

The district court denied in part LeBlanc's Rule 12(b)(6) motion because Parker had "adequately pled that there were sufficiently similar prior incidents in sufficient number and of which LeBlanc was aware to overcome qualified immunity at this stage." The court found that LeBlanc could not "seriously dispute (1) that the prior incidents were sufficient in number and (2) that LeBlanc did not have actual knowledge of them, particularly considering the allegations on information and belief that he knew about the Legislative Auditor's report, Attorney General op-ed, and state court testimony." LeBlanc filed a timely notice of appeal.

No. 21-30446

## DISCUSSION

We have appellate jurisdiction under the collateral order doctrine to review a district court's denial of a motion to dismiss on the basis of qualified immunity when the resolution turns on an issue of law. *See Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016); *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008).

Rule 12(b)(6) permits dismissals when a complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). This court reviews Rule 12(b)(6) dismissals *de novo*, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Morris v. Livingston*, 739 F.3d 740, 745 (5th Cir. 2014) (quotation marks and citation omitted). "In an interlocutory appeal of a denial of qualified immunity, we have jurisdiction to consider only whether a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law." *Brown*, 519 F.3d at 236 (quotation marks and citation omitted). A claim has facial plausibility "where a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Morris*, 739 F.3d at 745 (quotation marks and citation omitted).

"To establish a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Pratt v. Harris Cnty.*, 822 F.3d 174, 180 (5th Cir. 2016) (quotation marks and citation omitted). The Fourteenth Amendment guarantees that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "Our precedent establishes that a jailer has a duty to ensure that inmates are timely released from prison." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir.

2011). Quite recently, and addressing the liability of this same defendant, we held that "it is without question that holding without legal notice a prisoner for a month beyond the expiration of his sentence constitutes a denial of due process." *Crittindon v. LeBlanc*, 37 F.4th 177, 188 (5th Cir. 2022).

This analysis proceeds in two parts. First, we examine whether Parker has sufficiently alleged supervisory liability against LeBlanc. Second, we determine whether LeBlanc's alleged conduct violated a clearly established constitutional right.

### I.    *Has Parker sufficiently alleged supervisory liability?*

"Section 1983 does not create supervisory or *respondeat superior* liability." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Nonetheless, "[s]upervisory officials may be liable under § 1983 for their failure to adopt policies if that failure causally results in a constitutional injury." *Crittindon*, 37 F.4th at 186. "Liability only arises when the officials act, or fail to act, with 'deliberate indifference,' a 'disregard [for] a known or obvious consequence of [their] action[s].'" *Id.* (quoting *Porter*, 659 F.3d at 446) (alterations in original). "[A] plaintiff must show either the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation." *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003) (quotation marks and citation omitted).

To show a causal connection between the wrongful conduct of a supervisor and a constitutional violation, the plaintiff "must introduce evidence that each Defendant had 'actual or constructive notice' that their failure to adopt policies would result in constitutional violations." *Crittindon*, 37 F.4th at 186 (quoting *Porter*, 659 F.3d at 447). "A pattern of similar constitutional violations by untrained employees is ordinarily

necessary to demonstrate deliberate indifference." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quotation marks and citation omitted). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

As noted, Parker's Third Amended Complaint cited three pieces of evidence to support his allegations that LeBlanc implemented deficient policies evinced by a pattern of similar constitutional violations by untrained employees. *See id.* They are: (1) an October 2017 legislative audit report on the Louisiana DPSC entitled "CFE Management of Offender Data: Processes for Ensuring Accuracy Department of Corrections"; (2) a 2018 editorial by Senator John Kennedy and Attorney General Landry entitled, "Criminal Justice Reform Actually Hurting Public Safety," published in the newspaper "The Advocate"; and (3) testimony by DPSC employees admitting to rampant over-detention in a similar suit in Louisiana state court, *Chowns v. LeBlanc*, La. 37th JDC 26-932. Parker also alleges on information and belief that Defendant LeBlanc was aware of the three items we just enumerated.

LeBlanc argues that this complaint did not adequately allege the requisite "pattern" of constitutional violations by untrained employees "ordinarily necessary" under *Connick* to establish deliberate indifference for purposes of failure to train. *See* 563 U.S. at 62. He contends that Parker's allegations "identify issues of an entirely different kind than the one that allegedly caused Parker to spend too much time incarcerated." Essentially, LeBlanc insists that there is a meaningful distinction between Parker's over-detention due to his alleged misclassification as a sex offender, as opposed to over-detention due to miscalculations of his sentence or his status being generally lost in the system.

No. 21-30446

The district court "decline[d] to draw the line as finely as LeBlanc advances and limit the types of problems involved solely to those instances where individuals have been misclassified as sexual offenders." The court noted that the real problem alleged in the Legislative Audit report was the Department "not knowing when [inmates'] proper release date was" and that "inmate sentences have been 'done wrong'" as stated in testimony from *Chowns v. LeBlanc*. We agree with the district court's assessment.

In a similar case about over-detention — against the same defendant — the plaintiff also relied on a study to show a pattern of constitutional violations and allege supervisory liability. *See Crittindon*, 37 F.4th at 186–87. We held that "a reasonable jury could find that Defendants knew of a 'pattern of similar constitutional violations,' such that their inaction amounted to a disregard of an obvious risk." *Id.* at 187. The court there noted that LeBlanc was "in a position to adopt policies that would address this delay" and that he could not "avoid the evidence that the study exposed unlawful detentions of prisoners." *Id.* Much of the same is true here, though unlike in *Crittindon*, this case is merely at the 12(b)(6) stage, rather than a motion for summary judgment. *See id.* at 185. What LeBlanc may have done to comply with his supervisory obligations is not yet part of the record. Further, Parker has not had the opportunity to conduct discovery. His complaint alleges that

> despite his release date being properly calculated on the jail forms, he was not released for 337 days. For some unknown reason, when his properly calculated release date arrived, he was not released despite his numerous attempts to correct the issue. One possible reason for the over-detention is mistakenly classifying him as a sex offender and then failing to release him even after he provided the addresses requested.

The allegations in the complaint are that there is a "pattern of over-detention" that renders Parker's own case "neither unique nor even

No. 21-30446

unusual." The standard for deliberate indifference requires only a "pattern of *similar* constitutional violations by untrained employees," rather than an exact duplication. *See Connick*, 563 U.S. at 62 (emphasis added). Parker has alleged that he was detained for 337 days past his release date and has cited three pieces of evidence to support his allegations that LeBlanc was aware of the deficiencies of implemented policies that routinely led to errors like the one that violated his constitutional rights. *See id.*

On a Rule 12(b)(6) motion, we accept "all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiffs." *Morris*, 739 F.3d at 745 (quotation marks and citation omitted). A claim has facial plausibility when a plaintiff has pled "factual content" that allows us "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotation marks and citation omitted). We agree with Parker that his complaint sufficiently alleges the requisite "pattern" of constitutional violations by untrained employees to establish deliberate indifference for purposes of failure to train. *See Connick*, 563 U.S. at 62. We therefore hold that his complaint should proceed to the next stage of litigation, *i.e.*, tailored discovery. *See Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022).

II.     *Did LeBlanc allegedly violate a right that was "clearly established" at the time of the alleged misconduct?*

Qualified immunity involves answering two questions: (1) "whether the officer violated a constitutional right," and (2) "whether the 'right at issue was "clearly established" at the time of [the] alleged misconduct.'" [1]

_____

[1] There is variance in this circuit's caselaw when articulating the second part of the analysis for qualified immunity. An objective-unreasonableness component, dating from some of our older caselaw, is sometimes applied to require a finding that "the defendant's actions were objectively unreasonable in light of clearly established law at the time of the

No. 21-30446

*Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (alterations in original)). To determine whether a right is "clearly established," we "first look[] to Supreme Court precedent and then to our own." *Crittindon*, 37 F.4th at 186 (quotation marks and citation omitted). "Ultimately, the touchstone is fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Id.* (quotation marks and citations omitted).

Analyzing the first part of the test is not difficult here: the Fourteenth Amendment guarantees that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "Detention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process." *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980). Parker was detained 337 days past his release date. His pleading also adequately alleged supervisory liability for LeBlanc. *See infra.*

The second part of the test is "whether the right at issue was clearly established at the time of [the] alleged misconduct." *Morrow*, 917 F.3d at 874

---

violation." *See Porter*, 659 F.3d at 445. That language is a vestige of older case law that predates the Supreme Court's current test adopted in *Saucier v. Katz*, 533 U.S. 194 (2001), and *Pearson v. Callahan*, 555 U.S. 223 (2009). *See, e.g.*, *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990). Another circuit has similar language in some of its precedents but rejected it: "the test for qualified immunity has only two prongs — whether the defendant violated a constitutional right and whether the right at issue was clearly established; there is no separate 'objective unreasonableness' prong." *See Brown v. Lewis*, 779 F.3d 401, 417 (6th Cir. 2015). We cannot precedentially resolve conflicting caselaw today, but we mention one of our recent decisions that also opined there is no "standalone 'objective reasonableness' element to the Supreme Court's two-pronged test for qualified immunity." *See Baker v. Coburn*, 68 F.4th 240, 251 n.10 (5th Cir. 2023).

(quotation marks and citation omitted) (alterations in original). LeBlanc argues that the district court committed reversible error by not delineating between the two parts of the test for qualified immunity in its ruling or citing a case that would have put LeBlanc on notice that his conduct violated clearly established law. As support, he cites our decision in *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319 (5th Cir. 2020). In that case, on a motion for summary judgment, the district court had denied qualified immunity to a group of police officers in a failure to intervene claim. *Id.* at 328. We reversed, holding that the plaintiffs had not satisfied their burden to demonstrate that the law was clearly established because the plaintiffs had failed to "identify a single case to support the argument that any reasonable officer would have known to intervene under these circumstances." *Id.* at 345. We explained that "[w]ith no briefing and no district-court analysis to review, we cannot justify a denial of qualified immunity on the grounds that clearly established law shows that every officer acted unconstitutionally in this case." *Id.* at 346.

Parker counters that this case is distinguishable because, here, "[t]he law is clear that a jailer like LeBlanc has a duty to ensure inmates are timely released from prison," citing *Porter*, 659 F.3d at 445. We agree. Unlike the plaintiffs in *Joseph*, Parker identified cases in his district court briefing, as well as in his briefing to this court, that addressed the clearly-established-law prong of the qualified immunity analysis. In his complaint, Parker also stated that "[a]ccording to black-letter law, jailors may not imprison inmates longer than their sentences," and that "[r]ecent Fifth Circuit precedent recognized that 'There is a Clearly Established Right to Timely Release from Prison,'" again citing *Porter*, 659 F.3d at 445. We agree that there is sufficient clearly established law regarding the constitutional right to a timely release from prison and that Parker has sufficiently argued a violation of the right.

Finally, as he does with the question of supervisory liability, LeBlanc contends that defining the clearly established right as "timely release from prison" is overbroad. We have already rejected that argument above in the supervisory liability context, and we do so here as well. In *Crittindon*, we held that the defendants had "'fair warning' that their failure to address this delay would deny prisoners like Plaintiffs their immediate or near-immediate release upon conviction" because the defendants knew of the delays in prisoners' timely releases. 37 F.4th at 188. Parker's Third Amended Complaint cured the deficiency of his Second Amended Complaint in that he alleged on information and belief that LeBlanc was aware of DPSC employees' testimonies in *Chowns v. LeBlanc* regarding the regular pattern of over-detentions, and that LeBlanc was aware of Attorney General Jeff Landry's op-ed and the Legislative Auditor report regarding the DPSC's problem in not knowing inmates' proper release date. Parker's complaint sufficiently alleges that LeBlanc violated a right that was clearly established.

Construing these allegations in the light most favorable to Parker, we agree they are sufficient to support the argument that LeBlanc had "'fair warning' that [his] failure to address this delay would deny prisoners like [Parker] their immediate or near-immediate release upon conviction." *See Crittindon*, 37 F.4th at 188.

We close with a reminder. This appeal is from the denial of a motion to dismiss solely on the pleadings. LaBlanc's defense is yet to be stated. It remains to be seen what an evidentiary record will show as to LeBlanc's efforts to deal with the widespread problems in determining and enforcing release dates.

AFFIRMED.